593 So.2d 997 (1991)
MISSISSIPPI PUBLIC SERVICE COMMISSION
v.
MISSISSIPPI POWER & LIGHT COMPANY.
No. 89-CC-1123.
Supreme Court of Mississippi.
December 31, 1991.
*998 J. Harbour Mounger, William Bruce McKinley, Jackson, for appellant.
James K. Child, Wise Carter Child & Caraway, Henderson S. Hall, Jr., D. Michael Cockrell, Wise Carter Firm, Jackson, for appellee.
Before HAWKINS, P.J., and PITTMAN and McRAE, JJ.
PITTMAN, Justice, for the Court:
The primary issue in this appeal is the validity of rules adopted by order of the Mississippi Public Service Commission (MPSC). The Chancery Court of Hinds County held that each of the challenged rules were beyond the authority of the Commission to adopt. We affirm the chancery court as to all rules, except Rule 9 B(2). As to Rule 9 B(2), we reverse and reinstate the order of the MPSC.

I.
On May 13, 1986, the Mississippi Public Service Commission, acting pursuant to authority statutorily prescribed in Miss. Code Ann. § 77-3-45 (Supp. 1986), declared its intent to adopt revised Public Utility Rules of Practice and Procedure. Hearings in conformance with § 77-3-45 and the Commission order were held. Interested parties, including Mississippi Power & Light Company (MP & L), appeared and submitted comments, suggestions and objections. A record was made of the proceedings. After the hearings and receipt of numerous suggestions and comments, the MPSC adopted proposed revised rules effective April 1, 1988. MP & L requested reconsideration and stay of the order. The MPSC denied the request.
MP & L appealed to the Chancery Court of the First Judicial District of Hinds County pursuant to Miss. Code Ann. § 77-3-67 (Supp. 1990). The Chancery Court reversed the order of the MPSC, holding en route that each of the rules exceeded MPSC's statutory authority, and that two of the *999 rules violated due process requirements under the Fourteenth Amendment of the U.S. Constitution and Article 3, § 14 of the Mississippi Constitution.
The MPSC appeals and raises five issues, only three of which require discussion:
(1) Was the order of the MPSC adopting the Rules in excess of the statutory authority or jurisdiction of the Commission?
(2) Was the order of the MPSC adopting the Rules in violation of constitutional rights?
(3) Was the order of the MPSC adopting the Rules outside the scope of the Commission's duty to issue such reasonable rules and regulations as may be reasonably necessary or appropriate to carry out the provisions of Chapter 3 of Title 77 of the Mississippi Code of 1972, as amended, as provided by Miss. Code Ann. § 77-3-45 (Supp. 1990)?

II.
The MPSC is a public administrative agency with the duty and power to regulate public utilities pursuant to the Mississippi Public Utilities Act, Miss. Code Ann. § 77-3-1 et seq. (Supp. 1990). MP & L is a public utility.
Miss. Code Ann. § 77-3-45 (Supp. 1990) states in part:
The Commission shall prescribe, issue, amend, and rescind such reasonable rules and regulations that may be necessary to carry out the provisions of this chapter.
The MPSC contends that the revised rules were adopted pursuant to statutory authority as well as inherent and implied authority. A judicial determination of the limits and boundaries of MPSC's authority requires some knowledge of the historical background from which our administrative law emerged and the treatment by this Court of authority delegated to administrative agencies by the legislature.
First a statutory agency has only legislation granted authority, there is no inherent authority. Administrative law is a true child of necessity. The major obstacle to development of the administrative process, however, has been the doctrine of separation of powers. We have adhered to the principle that governmental powers are divided into the executive, legislative, and judicial branches, and persons entrusted with power of one branch shall not encroach upon the power of another.
The necessities of our times have brought forth the creation of administrative agencies, merging powers from all three branches. This action in regard to statutory agencies, to some extent has emasculated the separation of powers doctrine. Hopefully those branches of government provided for by constitutional language continue to honor their separation and while supporting of the other branch do not encroach into prohibited areas. Throughout the administrative process, however, we have somehow retained the basic idea that executive, legislative, and judicial power should, wherever possible, be separated from each other.
When, however, we are making additions within a framework already established, the idea that the three powers should not be blended at any level in any one set of hands has become so impractical that our legislative bodies, with judicial approval and not directly contrary to the constitution, have had no hesitation in merging power for efficient administration. After all, the philosophers who developed the theory of separation of powers were not thinking in terms of the practical problems of fitting administrative powers into the existing structure of government. They had no pattern to follow, and they sought a broad framework on which a governmental process could be developed. Modern problems, such as those presented by our present governmental machinery for regulation necessary to proper business administration, were left to fit within the frame. We have found through experience that the true principle which should guide the allocation of power within the general framework is indeed not the principle of separation of powers but the principle of checks and balances which separation of power affords. We have little concern for avoiding a mixture of the three powers in the same statutory agency; we have much concern *1000 for avoiding or minimizing unchecked power and for maintaining the constitutional check and balance.
The identifying badge of the modern administrative agency has become the combination of judicial power (adjudication) with legislative power (rule-making). We have taken great pains to see that the agencies are created and funded by our legislative bodies, that the personnel are appointed and reappointed by the executive, and that the residual power of review remains in the judiciary. We have learned that danger of tyranny or injustice lurks in unchecked power, not in blended power. See Davis, Administrative Law Text, § 1.09 at 27-30 (1959).
Understandably, the court refrains from interfering with duly delegated authority to an administrative agency, particularly where the rule making power of the agency is involved due to its legislative function. In exercising the check or review principle to restrain the agency from using unauthorized power, this Court has repeatedly stated that powers legislatively granted to and exercised by an administrative agency are limited to and must not exceed the authority prescribed by the legislative enactment. Miss. ex rel Pittman v. MPSC, 520 So.2d 1355 (Miss. 1987); Reserve Life Insurance Co. v. Coke, 254 Miss. 936, 183 So.2d 490 (1966); United Gas Pipeline Co. v. Miss. Public Service Commission, 241 Miss. 762, 133 So.2d 521 (Miss. 1961). Statutory provisions control with respect to the rules and regulations promulgated by such a body. Accordingly, such a body may not make rules and regulations which conflict with, or are contrary to, the provisions of a statute, particularly the statute it is administering or which created it. 73 C.J.S., Public Administrative Law and Procedure, § 89 at 584, 585, 588 (1983).

A.
Miss. Code Ann. § 77-3-51 (Supp. 1990) provides:

Upon agreement of the parties in any proceeding, depositions of any witnesses may be taken and used in evidence pursuant to procedure for taking depositions which may be prescribed by rules and regulations of the commission. (emphasis added).
New Rule 6 F, Depositions, provides:
In any formal investigation or proceeding before the Commission, the Commission Staff or any party to the proceeding may, by agreement of all parties in interest or, in the discretion of the Commission, take the deposition of witnesses residing within or without the state in the manner prescribed by law for taking of deposition in civil actions in the courts of this state. (emphasis added).
The Chancery Court, in holding that New Rule 6 F was contrary to or exceeded the statutory authority, stated:
[t]here is no way this rule can be reconciled with the statute. The statute clearly gave the right to use a deposition only upon agreement of the parties, which could perhaps be done anyway. But to amend this statute by rule and grant the Commission in its discretion to use depositions in investigations or any proceeding in the discretion of the Commission the right gives the Commission authority over, above and beyond that granted by the Legislature, and the rule cannot grant additional authority, but only be used as a vehicle to use the authority already granted.
The Chancery Court properly perceived the attempt by the MPSC to abridge the authority given it by the legislature by use of a rule exceeding conferred power.

B.
New Rule 7 E, Suspension of Construction, provides:
The Commission may, by order, temporarily suspend Commission authority for the construction or acquisition of a facility, plant or other capital item, whether previously certificated or not, upon failure by a utility to adhere to the provisions of this rule or for its failure to timely provide the Commission or its staff with any reasonable information requested concerning the cost, purpose or construction of the facility, plant or other *1001 capital item. Except as specifically allowed by order of the Commission, the related capital expenditures on the suspended construction or acquisition shall not be allowed in rate base nor shall AFUDC[1] accrue on such funds during any period of suspension.
Miss. Code Ann. § 77-3-13(3) (Supp. 1990) provides:
The Commission may issue a certificate of public convenience and necessity ... and may attach to the exercise of the rights granted by said certificate such reasonable terms and conditions as to time or otherwise in its judgment the public convenience, necessity and protection may require, and may forfeit such certificate after issuance for noncompliance with its terms, or provide therein for an ipso facto forfeiture of the same for failure to exercise the rights granted within the time fixed by the certificate.
New Rule 7 E provides procedure not permitted by the statute for suspension of a certificate subsequent to issuance. The rule exceeds and is contrary to the provisions of § 77-3-13(3). The Chancery Court observed:
The Commission already has such authority but the certificate must have the terms included therein when the certificate is granted. The significance of this provision is that there has been a due process hearing provided when the condition is imposed, and the Commission cannot then alter those terms and provisions or suspend the authority granted without a due process compliance. This rule, then, clearly violates the ... statutory scheme provided in the Utilities Act.
Moreover, a new Rule 7 E Suspension would cause the utility to immediately suspend construction, implicating contractual relations between the utility and its construction contractors and placing in limbo vested rights of parties. It is apparent that the legislature did not intend the statute to be amplified or abridged for such purpose.

C.
New Rule 7 F(1), Action on Non-construction, provides:
Unless otherwise provided by the order granting the certificate, in the event that the construction authorized by a facilities certificate is not started within six (6) months of the scheduled starting date, the certificate may, by order, be voided.
This rule also exceeds and is contrary to the statutory provisions of § 77-3-13(3). The trial court's observation with respect to New Rule 7 E applies with equal force to New Rule 7 F(1).

D.
New Rule 7 F(9), Notice to Customers, provides:
Within forty-five (45) days of a utility's filing for any certificate, the utility shall mail to each of its customers written notice of said filing fairly summarizing the relief sought.
This notice is required automatically by New Rule 7 F(9) in all certificate application proceedings under § 77-3-13(3). The Chancery Court held that the new rule conflicted with Miss. Code Ann. § 77-3-47 (Supp. 1990), which provides:
The Commission may, in addition to the hearings specifically provided by this chapter, conduct such other hearings as may be required in the administration of the powers and duties conferred upon it by this title.
The Commission shall fix the time and place of hearings, if any is required, and shall serve notice thereof, not less than twenty (20) days before the time set for such hearings, unless the Commission shall find that public convenience or necessity requires that such hearings be held at an earlier date... . Notice of all such hearings shall be given to the persons interested therein by mailing such notice to each public utility which may be affected by any order resulting therefrom and by publication in a newspaper of general circulation published in Jackson, Mississippi.
*1002 MPSC maintains that the Chancery Court erred because § 77-3-47 does not apply to certificate proceedings under § 77-3-13(3). MPSC contends that the only notice provisions applicable to a certificate hearing is set forth in § 77-3-13(3). This section states:
The Commission shall set the matter for hearing and shall give reasonable notice of the hearing thereon to all interested persons as in its judgment may be necessary under its rules and regulations, involving the financial ability and good faith of the applicant, the necessity for additional services and such other matters as the Commission deems relevant.
It is apparent that § 77-3-13(3) is the proper statute for certificate hearings for all cases pertinent thereto. The provisions of the statute afford no comfort to MPSC, however, because it provides that the Commission shall give the notice required for the hearing. New Rule 7 F(9) would transfer this duty to the utilities contrary to the provisions of the statute. If change is desired, the legislative body which created the Act should make the change by proper amendment. To permit the rule would effectively abridge the authority conferred by the Act.

E.
New Rule 9 B(2), Designation, provides:
Each rate filing shall clearly designate on its face that subsection of paragraph A of this rule under which it is filed. In the event that the Public Utilities Staff or any party disagrees with the utility's designation of a filing, the Commission may, upon motion within thirty (30) days of the date of filing, determine whether or not the filing is properly designated.
The Chancery Court ruled that New Rule 9 B(2), by allowing a deficiency in designation to be noted by the staff or any party within thirty days, conflicted with § 77-3-37(6) and (8) which prior to July 1, 1990, provided as follows:
§ 77-3-37(6).
Upon filing by such public utility of a notice of intent, the public utilities staff shall examine such notice of intent with respect to its compliance with the foregoing requirements and those established by the commission. The public utility shall be notified by such staff or deficiencies in the notice of intent within five (5) days of the filing date, and the public utility shall correct such deficiencies as may be reasonably noted.
§ 77-3-37(8).
Upon filing of the notice of intent, the public utilities staff shall review, investigate and make recommendations to the commission within thirty (30) days from the date of the filing of such notice of intent with respect to the reasonableness of rates charged or proposed to be charged, the service furnished or proposed to be furnished and the consistency of such rates and service with the public policy.
The Chancery Court properly held that the New Rule conflicted with the subsections of the statute as they existed prior to July 1, 1990.
Subsequent to the Chancery Court ruling and during the pendency of this appeal, the legislature amended the Utilities Act. The amendments, effective July 1, 1990, included abolition of § 77-3-37(6) and (8) as they existed prior to the effective amendment dates, and recodification of succeeding subsections of the Code in the place and stead of those deleted. The amendments are sufficient to remove objections pertaining to MPSC authority to issue New Rule 9 B(2).

F.
New Rule 9 B(9)(a) and (b), Deficient Filings: Rejection of; Procedure for Appeal, provides:
(a) Rejection of. Upon any filing by a public utility of any Notice of Intent to change or establish rates, the filing shall be assigned a Notice File number and the Public Utilities Staff shall examine the filing with respect to its compliance with the requirements of the appropriate schedule in Appendix C and shall notify the utility of any substantial deficiencies in its compliance within five (5) days of the original filing date. Upon notification *1003 to the utility by the Public Utilities Staff of any substantial deficiency in compliance with these regulations, the filing shall be deemed to be deficient and rejected and shall not be considered by the Commission thereafter until such time as the deficiencies are substantially corrected. The time periods imposed upon the Commission by Sections [sic] 77-3-39(6) of the Mississippi Code shall not begin to run until such time as an amended filing is made in substantial compliance with these regulations.

(b) Procedure for Appeal. Any party aggrieved of any action by the Public Utilities Staff in rejecting a filing for non-compliance with these regulations shall have the right, upon motion, to be heard by the Commission in regard to its compliance or the Commission may act sua sponte and the Commission shall render an order on said motion within twenty (20) days of the date the motion is filed, failing which the motion shall be deemed denied. The order of the Commission upholding the action of the Staff in rejecting the filing, or the Commission's failure to act on the motion within twenty (20) days as provided for herein, shall be deemed by the Commission as a final order or decision of the Commission appealable under the applicable provisions of law. In the event the action of the Staff is overruled by the Commission, the filing shall be deemed to have been filed as of the original filing date.
The Chancery Court held that this Rule conflicted with § 77-3-37(6) and (8) as they existed prior to their abolition by the legislative amendments effective July 1, 1990. Abolishment of the statutory subsections removes this particular conflict. However, the Rule conflicts with § 77-3-39(6) which provides:

Notwithstanding anything to the contrary contained in this chapter, the commission shall hold the hearing, render its decision and enter its order not more than one hundred twenty (120) days after the date of the filing of said notice of intent. If the commission does not make a final determination concerning any schedule of rates within a period of one hundred twenty (120) days after the date of the filing of the notice of intent, and notwithstanding any order of suspension, except as provided in subsection (11) of this section, the public utility may put such suspended rate or rates into effect as temporary rates by filing with the commission a bond in a reasonable amount approved by the commission, with sureties approved by the commission, conditioned upon the refund, in a manner and to the parties to be prescribed by order of the commission, of the amount of the excess, with lawful interest thereon, if the rate or rates so put into effect are finally determined to be excessive... .
The real problem with New Rule 9 B(a) and (b) is the provision restricting the time period imposed upon the commission by § 77-3-39(6). The effect of the Rule is to extend the statutorily imposed time period. The New Rule would grant MPSC the power, contrary to the statute, to deny a public utility the right to a final decision and order not more than one hundred twenty (120) days after the date of filing of the said notice of intent. The importance of the statutory time constraint is amplified by the provision granting a public utility the right to put a rate increase into effect under bond if no decision is made in the time limited by statute. The effect of the rule is to amend the statute and such is not permissible.

G.
The Chancery Court also held that New Rules 7 E and 7 F(1) violated due process requirements of the Fourteenth Amendment to the United States Constitution and Article 3, Section 14 of the Mississippi Constitution. It is not necessary that we decide the constitutional issues. Courts will not decide a constitutional question unless it is necessary to do so in order to decide the case. Kron v. Van Cleave, 339 So.2d 559, 562 (Miss. 1976).

H.
The MPSC also stresses that their order adopting the rules may be sustained *1004 on the basis of inherent and implied authority. Recognizing that authority may be implied as well as expressed we restrict the power to that necessarily or reasonably incident to those granted. Although implied powers may sometimes be referred to as "inherent", it is well settled that an administrative agency has no inherent powers. 1 Am.Jur.2d, Administrative Law, § 73 (1962). Moreover, the agency may not make and adopt rules under the guise of "implied power" which exceed or conflict with the authority granted it by statute.

III.
We affirm the decision of the Chancery Court of Hinds County pertaining to all rules except New Rule 9 B(2). The order of the Chancery Court reversing the order of the Commission as to Rule 9 B(2) is reversed, and the order of the Commission as to this Rule is hereby reinstated.
AFFIRMED IN PART, REVERSED AND ORDER OF MISSISSIPPI PUBLIC SERVICE COMMISSION REINSTATED IN PART.
ROY NOBLE LEE, C.J., and HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.
DAN M. LEE, P.J., dissents without separate written opinion.
NOTES
[1] AFUDC is the acronym for "allowance for funds used during construction."