# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 92-CA-00883-SCT

*IN THE MATTER OF THE ESTATE OF ROBERT L. JOHNSON, DECEASED: CLAUD L. JOHNSON*

*v.*

*ROBERT M. HARRIS AND ANNYE C. ANDERSON*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/92 |
| TRIAL JUDGE: | HON. JON M. BARNWELL |
| COURT FROM WHICH APPEALED: | LEFLORE COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | JAMES WARREN KITCHENS |
| | NANCY A. OLSON |
| ATTORNEY FOR APPELLEES: | STEPHEN E. NEVAS |
| NATURE OF THE CASE: | CIVIL - WILLS, TRUSTS AND ESTATES |
| DISPOSITION: | REVERSED AND REMANDED - 3/28/96 |
| MOTION FOR REHEARING FILED: | 4/12/96 |
| MANDATE ISSUED: | 11/25/97 |

**BEFORE DAN LEE, C.J., BANKS AND MILLS, JJ.**

**MILLS, JUSTICE, FOR THE COURT:**

¶1. This appeal questions the entry by the Chancellor below of an order dismissing the claim of Claud L. Johnson as the illegitimate son and only direct heir of Robert L. Johnson, deceased.

¶2. Julia Major and Charles Dodds were married on February 2, 1889. While still married to Charles, but separated from him, Julia gave birth to Robert L. Johnson in Hazlehurst, Mississippi, on May 11, 1911. The father of Robert L. Johnson was one Noah Johnson.

¶3. Julia birthed eleven children by Charles (who later assumed the surname of Spencer) before her death in 1949. One of these children was Carrie H. Thompson, half-sister to Robert L. Johnson.

¶4. After Julia's death, Charles Dodds cum Spencer married Mollie Jackson. This marriage produced Annye Anderson, half-sister to Carrie H. Thompson. Annye is unrelated to Robert.

¶5. Robert L. Johnson became an accomplished musician, singer and songwriter during his short life.

He specialized in that art form now known as "the blues." In between performances as an itinerant bluesman, Robert occasionally interrupted his ramblings to enjoy marital bliss. Robert first married Virginia Travis on February 17, 1929, in Penton, Mississippi. Virginia died in childbirth on April 10, 1930. The child was stillborn.

¶6. Robert married Colleta Craft on May 4, 1931, in Hazlehurst, Mississippi. Colleta died without issue in 1933 or 1934.

¶7. The appellant in this case, Claud L. Johnson, was born out of wedlock to Virgie Jane Smith on December 16, 1931, in Lincoln County, Mississippi. His birth certificate names R. L. Johnson as his father. Johnson's occupation is listed as a laborer.

¶8. Robert L. Johnson died "outside" of Greenwood, Mississippi, on August 16, 1938, at the age of 27. He recorded 29 songs during his short life. His recordings have greatly influenced modern popular music.

¶9. Carrie H. Thompson, one of Robert L. Johnson's half-siblings, lived in Maryland. She entered into an agreement with Stephen C. LaVere of Memphis, Tennessee, on November 20, 1974, whereby she assigned all of her purported rights to copyrights of Johnson's works, photographs of Johnson and any other materials concerning Johnson she might have to LaVere. In return, LaVere was to pay her fifty percent of all royalties collected by him as a result of his efforts to capitalize on Johnson's musical and artistic legacy.

¶10. On July 17, 1981, Annye C. Anderson, of Barrington, Illinois, wrote Carrie H. Thompson, her half-sister, and furnished her a power-of-attorney, prepared by one Mr. Kasilovsky, her attorney, granting Ms. Anderson irrevocable power to act for her in all of her affairs. This power of attorney was executed on July 22, 1981. Ms. Anderson stated that she obtained the power of attorney because "Uh, I was dealing with the Robert Johnson Estate with my sister. And my sister was ill. And she wanted me to handle her affairs."

¶11. The record next contains correspondence from Krasilovsky to Ms. Anderson concerning the estate of Robert L. Johnson, dated August 27, 1982. This letter advised Ms. Anderson to select ". . . a formal attorney in Mississippi or place of death for opening the estate for official probate purposes." According to the attorney, "This step is necessary to establish basic title in your sister as administratrix."

¶12. Carrie H. Thompson died testate in Maryland on February 20, 1983.

¶13. The testatrix appointed Annye C. Anderson as her "personal representative" and devised all of her property, including ". . . all rights and claims I may have as a result of an agreement dated November 20, 1974 . . ." to Ms. Anderson and to the testatrix's grandson, Robert M. Harris. A copy of the agreement with LaVere was attached to Thompson's will. The will is accompanied by codicils which appear to conflict with the original intent of the testatrix. (These inconsistencies are matters for the Maryland probate court to interpret.) Within 30 days of the death of Thompson, Annye C. Anderson filed the will and codicils for probate in Maryland.

¶14. On June 1, 1989, Annye C. Anderson filed her initial petition to open the estate of Robert L.

Johnson in the Chancery Court of Leflore County, Mississippi. She was appointed administratrix on June 1, 1989. The notice to creditors was not issued until May 6, 1991.

¶15. In the interim, Columbia Records released *Robert L. Johnson -- The Complete Recordings* in 1990. These recordings have enjoyed extensive popularity. The inventories and accountings filed by Anderson in 1990 and 1991 state that the estate contained no property or money and that the only assets were ". . . miscellaneous and unknown."

¶16. Due to objections filed by other parties below, the Chancellor removed Anderson as administratrix and appointed Willis B. Brumfield, Chancery Clerk of Leflore County, as successor administrator on May 28, 1991. On August 29, 1991, the Estate of Robert L. Johnson entered into a contract with Stephen LaVere authorizing him to act as agent for the estate.

¶17. Claud L. Johnson, through counsel, filed his formal entry of appearance in the estate on February 19, 1992. He timely responded to a petition to determine heirship filed against him by Brumfield on March 10, 1992.

¶18. Finally, on March 23, 1992, the statutorily-required summons to unknown heirs was first published.

¶19. In his answer to the petition for determination of heirship, Claud alleged that he was the illegitimate son of Robert L. Johnson, deceased, and that he is the sole heir of the deceased. He also alleged that ". . . the original administratrix's failure to exercise reasonable diligence to locate him and give him such notice deprived him of due process at law . . ." under the constitutions of the United States of America and the State of Mississippi.

¶20. Claud found a stone in his passway when Ms. Anderson filed a Motion to Strike the Affirmative Allegations and Dismiss the Claim of Defendant Claud Johnson. Ms. Anderson hung her hat on Sections 91-1-15 and 91-1-27 to -29 of the Mississippi Code of 1972, arguing that Claud's claim was barred.

¶21. The Chancellor, on June 22, 1992, entered an order dismissing Claud's claim as being time-barred under Section 91-1-15(d)(ii) of the Mississippi Code of 1972.

## I. ISSUES

¶22. Claud raises three issues on appeal:

**A. The three-year statue of limitations does not apply to Appellant, as that remedy applies only to those illegitimate children having an estate claim prior to July 1, 1981.**

**B. The original administratrix's failure to perform her duties should not be allowed to inure to her benefit.**

**C. The Mississippi Legislature's intent in amending the language of Section 91-1-15 was to correct and remedy the unconstitutionally disparate treatment given illegitimate and legitimate children, affording to illegitimate children the same rights and opportunities as legitimate children.**

## II. ANALYSIS

¶23. The record below establishes that Carrie H. Thompson held herself out as ". . . sister and only known living heir of Robert L. Johnson . . ." from at least November 20, 1974, the date of her written agreement with Stephen C. LaVere, until her death in 1983. This agreement further states that:

> Mrs. Thompson agrees that LaVere . . . is acting upon the representations to the effect that she is the nearest next of kin of Robert L. Johnson, the only other heirs being known being her son and grandson. She understands and agrees that in the event that there are other heirs of Robert L. Johnson who would have a right to the payment of such sums, she shall be responsible for the payment of the same in accordance with their interests in the monies that she has received and shall protect LaVere from any actions, costs or expenses as a result of claims made against such sums.

Mrs. Thompson further agreed that: ". . . this agreement shall bind the parties hereto, their heirs, personal representatives, and assigns . . ."

¶24. Annye C. Anderson assumed her responsibilities under the above agreement by obtaining the power of attorney from Mrs. Thompson on July 22, 1981, granting Ms. Anderson irrevocable power to act for Mrs. Thompson in all of her affairs. Ms. Anderson stated that her purpose for obtaining the power of attorney was because ". . . I was dealing with the Robert Johnson Estate with my sister."

¶25. In 1977, the United States Supreme Court rendered ***Trimble v. Gordon***, 430 U.S. 762 (1977). The ***Trimble*** Court struck down an Illinois statute which allowed children born out-of-wedlock to inherit by intestate succession only from their mothers, whereas children born in wedlock could inherit by intestate succession from both parents. The U.S. Supreme Court found such statutes to be violative of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution.

¶26. In response to ***Trimble v. Gordon***, the Mississippi Legislature, in 1981, amended Section 91-1-15, Mississippi Code of 1972, to provide for intestate succession among an illegitimate and the natural father with certain limitations. The relevant language to this case in the act states as follows:

> A remedy is hereby created in favor of all illegitimates having any claim existing prior to July 1, 1981, concerning the estate of an intestate whose death occurred prior to such date by or on behalf of an illegitimate or an alleged illegitimate child to inherit from or through its natural father and any claim by a natural father to inherit from or through an illegitimate child shall be brought within three (3) years from and after July 1, 1981, and such time period shall run notwithstanding the minority of a child.

> The remedy created herein is separate, complete and distinct, but cumulative with the remedies afforded illegitimates as provided by the Mississippi Uniform Law on Paternity; provided, however the failure of an illegitimate to seek or obtain relief under the Mississippi Uniform Law on Paternity shall not diminish or abate the remedy created herein.

¶27. The Appellee herein contends that the above statute granted Claud Johnson a window from July 1, 1981, through July 1, 1984, within which to assert his claim as the illegitimate son and only

heir of Robert L. Johnson, deceased. Assuming for the purposes of this opinion that Ms. Anderson and the Chancellor below have correctly stated the legal effect of Section 91-1-15, we are asked by Claud to look through this window and review the acts of the administratrix and her testatrix which occurred prior to the opening of the estate of the decedent in Mississippi. Simply stated, Claud asks us to determine the effect on his rights of acts of commission and omission undertaken by Mrs. Thompson and Ms. Anderson, in their personal and representative capacities, from 1974 to the present.

¶28. We must first state the law applicable to the facts presented to us. Mississippi has long recognized the doctrine of *executorship de son tort*. ***See Hardy v. Thomas***, 23 Miss. 544 (1852). This doctrine is generally defined as:

> . . . any intermeddling with the estate of a decedent under a claim of authority, or any act characteristic of the office of a rightful executor or which evinces legal control, makes the person doing such act an *executor de son tort*. Probably the most common form of intermeddling is taking possession of the assets without administration and controlling the property as if the taker were the legal representative.

31 Am.Jur.2d, *Executor and Administration*, § 36.

¶29. An *administratrix de son tort* is held to the same standard of trust and fiduciary responsibilities as a duly-appointed administratrix or executrix. Under Mississippi law, an administratrix is under a duty to use reasonable diligence to ascertain potential heirs. ***Smith by and through Young v. Estate of King***, 501 So. 2d 1120 (Miss. 1987). An administratrix acts as a fiduciary for all persons interested in the estate. ***Shepherd v. Townsend***, 249 Miss. 383, 392, 162 So. 2d 878, 881 (1964).

¶30. Further, in the absence of fraud or mistake, an administratrix or executrix may not take inconsistent positions which could be detrimental to beneficiaries, on the one hand, and beneficial to herself on the other hand. ***Estate of Ratliff***, 395 So. 2d 956, 957 (Miss. 1981).

¶31. We find under the facts of this case that Carrie H. Thompson became an *executrix de son tort* of the unprobated estate of Robert L. Johnson in 1974, when she entered into the agreement with LaVere. In their agreement she purported to be the "sister" of Robert L. Johnson and his only surviving heir. She further agreed that she, her personal representative, and assigns were bound to indemnify LaVere in the event that other heirs were later determined to be entitled to the proceeds of the Johnson estate.

¶32. Ms. Anderson assumed the status of an *executrix de son tort* by obtaining the irrevocable power of attorney from Mrs. Thompson and by accepting appointment as the personal representative of Mrs. Thompson's estate. Ms. Anderson admitted that in 1981, ". . . I was dealing with the Robert Johnson Estate with my sister."

¶33. The record establishes that Ms. Anderson was generally aware of the duties of an administratrix from 1981 to 1984. In fact, she was advised by counsel in 1982 that she should select ". . . a formal attorney in Mississippi or place of death for opening the estate for official probate purposes."

¶34. The record is clear that both Mrs. Thompson and Ms. Anderson held themselves out as

representatives of the estate of Robert L. Johnson, particularly during the critical window from 1981 to 1984. Both *executrices de son tort* took actions with LaVere and other third parties which likely chilled any interest that LaVere or others would have had in coming to Mississippi and locating the rightful heirs. Finally, Ms. Anderson was advised in 1982 by her attorney to take action. This she failed to do.

¶35. Having concluded that Ms. Anderson was the *executrix de son tort* of the estate of Robert L. Johnson as a result of her "intermeddling" in his estate, should she now be allowed to take under the will of Carrie H. Thompson to the exclusion of illegitimate heirs of the decedent?

¶36. In this case, Ms. Anderson, the former administratrix, took a position in the estate of Robert L. Johnson which was beneficial to herself and detrimental to Claud. Her failure to act to properly open the estate in 1982, while she was acting as *administratrix de son tort*, operates as a waiver of the statutory bar against Claud. Our Mississippi courts have long followed the maxim of equity that no person bound to act for another can act for herself. From 1974, until the Chancellor removed Ms. Anderson as administratrix in 1991, Mrs. Thompson and Ms. Anderson were under a duty to act for the rightful heirs of Robert L. Johnson, not for themselves. Thus, under these facts, equity will waive the statutory bar of Section 91-1-15 and open the window to the extent that Claud shall be allowed to prosecute his claim to be the illegitimate son of Robert L. Johnson, deceased, to the same extent as though he had filed his claim between July 1, 1981, and July 1, 1984.

¶37. We do not address the constitutional issues raised by the Appellant since such a determination is not necessary under the facts of this case.

### III. CONCLUSION

¶38. The order entered by the Chancellor below barring the claim of Claud L. Johnson and striking his affirmative allegations is hereby reversed and this matter is hereby remanded to the Chancery Court of Leflore County, Mississippi, for further proceedings consistent with this decision. ***Touart v. Johnston***, 656 So. 2d 318, 321 (Miss. 1995); ***Mississippi Public Service Commission v. Mississippi Power & Light***, 593 So. 2d 997 (Miss. 1991).

¶39. **REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, McRAE, ROBERTS AND SMITH, JJ., CONCUR.**

**BANKS, JUSTICE, DISSENTING FROM DENIAL OF MOTION FOR**

**REHEARING:**

¶40. On reconsideration, I am compelled to dissent from the denial of Mr. Harris's and Ms. Anderson's motion for rehearing in this matter because this Court has decided to apply a new

doctrine on an appeal from a grant of summary judgment to dispose of a material issue of law adversely to the appellees.[1] Thus, the appellees are wholly deprived of an opportunity to confront this claim with proof. This Court should not be the instrument of such a blatant denial of due process.

¶41. As the petitioners pointed out in their request for rehearing, the doctrine of *executorship de son tort* that has been utilized by this Court to reach its conclusion is subject to defenses that the petitioners could have asserted had Claud Johnson invoked this doctrine in support of his claim to heirship in the chancery court below. Indeed, that doctrine was never raised by any party: not in the chancery court below, not in the briefs on appeal, not even at oral argument. This Court has reversed the chancery court's grant of summary judgment on a clear statute of limitations issue, then, on a fact-intensive legal theory of fraud, and has rendered judgment in favor of the party opposing summary judgment. Petitioners have had no opportunity to make any record on their liability as *executrices de son tort*, nor any opportunity to assess the causal connection between any such liability and the statute of limitations here at issue in Claud's claim. They are entitled to a remand to develop the record on this question.

¶42. This Court has seen fit in other cases to address fraud when it leaps up out of the record but has not been raised by the parties. *See, e.g.,* **In the Matter of Flowers**, 493 So. 2d 950 (Miss. 1986) (reversing chancellor's decree where record indicated possible fraud on the court, and remanded for determination of the nature and effect of the possible fraud). However, it has also quite properly remanded the causes in those instances for further development of the record below. *E.g.,* **Id.** at 951.

¶43. In my view, a remand is especially appropriate in this case because the Court was unable to conclude with certainty that the petitioners' "intermeddling" that gave rise to their status as *administratrices de son tort* occurred during the relevant time period, the three-year window given claimants such as Claud by statute: "Both *executrices de son tort* took actions with LaVere and other third parties which *likely* chilled any interest that LaVere or others would have had in coming to Mississippi and locating the rightful heirs" (emphasis added). *Ante* at . Petitioners' actions that occurred prior to 1977 were not in fact "intermeddling" in any of Claud's rights to Robert Johnson's estate, because Claud had no recognized rights to that estate prior to the United States Supreme Court's decision in **Trimble v. Gordon**, 430 U.S. 762 (1977) (striking down a statute that denied rights of intestate succession from fathers to children born out of wedlock). *See* **In the Matter of the Estate of Smiley,** 530 So. 2d 18 (Miss. 1988) (children born out of wedlock had no right to share in father's estate before July 1, 1981, with the passage of Miss. Code Ann. § 91-1-15).

¶44. Thus, the intermeddling such as would cause an impairment to Claud's capacity to assert his own rights logically could not have occurred until after 1977, when Claud's potential right to his putative father's estate was first suggested as a matter of federal constitutional law. Although the record does suggest some actions on the part of Carrie Thompson which might be considered "intermeddling" within the meaning of this doctrine, the record is plainly not fully developed on the question of when the intermeddling, if any, occurred. Thus, the petitioners should in all fairness and due process be given an opportunity to address the allegation that they behaved in a manner which should excuse Claud for his failure to act within the statutory period, and offer any defenses that they may have. Of course, Claud would also have an opportunity on remand to more fully develop any claim of *executorship de son tort*.

¶45. That said, I have some reservations about the Court's use of this doctrine to toll the statute of limitations that would have otherwise barred Claud's claim. *Executorship de son tort* is universally deployed (outside of this State, as of today) "only for the purpose of suing an intermeddler or making him liable for the assets with which he has intermeddled." **31 Am. Jur. 2d _Executors and Administrators_ § 34 (1989)**. Indeed, although an *executor de son tort* has by law become something akin to a constructive trustee, he remains entitled to payment from the rightful administrator of an estate in reimbursement for his proper expenditures that were undertaken for the benefit of the estate. *Id.* at § 47. The principles that guide such executors' liability do not, to say the least, bespeak any punitive recriminations that typically characterize the types of fraud that are often used to equitably excuse the operation of independent statutes of limitations. Indeed, I have seen no authority in any jurisdiction for the proposition that *executorship de son tort* necessarily implies such malign intent on the part of the tortious executor as will toll a statute of limitations that might independently operate to bar another claimant against an estate.

¶46. Nevertheless, I do find marginally defensible, particularly in light of our related precedent, that aspect of the Court's decision that may be read to hold that a showing that the petitioners acted as *executrices de son tort* (or "executrices in their own wrong" as defined in Miss. Code Ann. § 91-7-249) during Claud's three-year window could have sufficiently caused his failure to assert his claims against his father's estate so as to toll the statute of limitations. While I am inclined to affirm the chancery court on the basis of this record, this Court has tolled statutes of limitations, even the limitation in § 91-1-15, where it has found that a fraud has been perpetrated upon the Court, such as where the administrator knew of an heir and failed to notice him or notice the court that the estate had been opened. *See, e.g.,***Smith v. King,** 501 So. 2d 1120, 1122-23 (Miss. 1987) (holding that proof that an administratrix committed fraud upon the court when she knew of an illegitimate child of the decedent but failed to inform the chancery court of the child's existence would serve to toll the time bar of § 91-1-15(3)(c), where petition for heirship was otherwise untimely filed); *see also* **In the Matter of Flowers,** 493 So. 2d 950 (Miss. 1986) (remanding for consideration of whether fraud was perpetrated on the court, which would toll the time bar of § 91-1-15(3)(c) of an otherwise untimely claim).

¶47. The Mississippi Legislature has also seen fit to toll a statute of limitations when the cause of action has been fraudulently concealed from a claimant by the defendants in the action. Miss. Code Ann. § 15-1-67. These same principles, that claimants' ability to assert their claims cannot be abrogated by others' adverse actions, imply that a finding of *executorship de son tort* will operate in a similar tolling manner where there is some showing that the act of intermeddling caused the claimant's failure to comply with the statute of limitations. This conclusion is especially appropriate with regard to the statute of limitations in § 91-1-15, a statute which we have commanded to be interpreted broadly. **Larsen v. Kimble**, 447 So. 2d 1278, 1279 n.1 (Miss. 1984).

¶48. That said, I reiterate my view that the motion for rehearing should be granted, and the Court should remand this action, which came before us from a grant of summary judgment, for a development of the record on the causal relationship between the petitioners' intermeddling and Claud's failure to assert any claim that he may have had to his father's estate during the statutorily prescribed three-year window.

**PRATHER AND SULLIVAN, P.JJ., AND PITTMAN, J., JOIN THIS OPINION.**

1. I have also, on reconsideration, concluded that the use of the term "illegitimate" in the majority opinion to describe and refer to people born of unwed parents is outdated and derogatory, and unbecoming of this Court. Moreover, I believe the use of this term contradicts the spirit of **_Trimble v. Gordon_**, 430 U.S. 762 (1977), the case that first recognized that the rights of so-called "illegitimates" enjoy equal footing with those of their "legitimate" co-heirs. Indeed, it is ironic as well as unfortunate that an opinion which in fact *legitimizes* the claims of the alleged child of an unwed union between Robert Johnson and Virgie Jane Smith nevertheless refers to that child and others who are similarly born as "illegitimate."