LAMAR, Justice,
for the Court:
¶ 1. This interlocutory appeal involves two consolidated actions in which the trial court denied competing summary judgment motions. The following issues are raised on appeal: (1) whether the Certificate of Need (CON) statutes apply to the University of Mississippi Medical Center (UMMC); if so, (2) whether the Mississippi Department of Health (MSDH) has the authority to create an exception regarding when UMMC is required to apply for a CON; and (3) if MSDH does not have that authority, whether the application of the CON statutes to UMMC is unconstitutional, as UMMC is governed by the Board of Trustees of State Institutions of Higher Learning (IHL), a constitutionally created body vested with “management and control” over Mississippi’s institutions of higher learning. We hold that the CON statutes apply to UMMC and that MSDH does have authority to create a “teaching” exception regarding when UMMC is required to apply for a CON. Therefore, we do not reach the question of whether the application of the CON statutes to UMMC unconstitutionally infringes on IHL’s constitutionally vested authority to “manage and control” UMMC.
FACTS AND PROCEDURAL HISTORY
¶ 2. UMMC filed an application for a CON with MSDH on February 3, 2009. In its application, UMMC outlined its intent to purchase a new Elekta Synergy *982 Platform Linear Accelerator System (accelerator) and to renovate a portion of the UMMC basement to house the accelerator. UMMC represented that the accelerator would be an important aspect to the planned radiation oncology residency program.[1] The project had been approved by the IHL and was to be funded through self-generated patient revenue. MSDH recommended approval of the project on June 17, 2009.
¶ 8. On July 8, 2009, Jackson HMA (HMA)[2] and St. Dominic-Jackson Memorial Hospital (St. Dominic) filed a request for a public hearing in response to UMMC’s application. MSDH thereafter sought an official opinion from the Attorney General (AG) on the issue of the CON statutes’ applicability to UMMC. On February 26, 2010, the AG issued the requested opinion, opining that UMMC was not subject to the CON laws and did not have to file an application for a CON; therefore, MSDH was not required to conduct a public hearing on UMMC’s CON application. However, the AG issued a second opinion on June 9, 2010, in which the AG opined that there was no express exemption for UMMC within the CON laws, but further opined that:
it is within the authority of the Department of Health to make determinations of reviewability under the CON laws and/or enact regulations including provisions in the State Health Plan, which take into consideration UMMC’s status as the state’s only teaching hospital, and which carve out exceptions for equipment and/or services which are deemed necessary or desirable by UMMC....
In response to the second AG opinion, UMMC withdrew its application and requested a determination by MSDH of re-viewability. A determination-of-reviewa-bility application is a procedure by which an entity covered by the CON statutes may seek a determination of whether the proposed project requires a CON. MSDH granted UMMC’s request on July 22, 2010, without public hearing, finding that UMMC was not required to obtain a CON for the proposed project under Section 109.08 of the 2010 State Health Plan,[3] which provides that the CON criteria and standards shall not prevent UMMC from acquiring and operating stereotactic radio-surgery equipment justified by UMMC’s teaching and/or research mission.
¶ 4. Shortly thereafter, on August 10, 2010, HMA, St. Dominic, and Mississippi Baptist Medical Center, Inc. (collectively, Hospitals) filed their complaint against MSDH and UMMC in the Chancery Court of Hinds County. The complaint requested declaratory relief, temporary and in-junctive relief, and/or appeal from the final *983 order of MSDH. The Hospitals requested the court determine that the CON statutes apply to UMMC and that MSDH has no authority to exempt UMMC from obtaining a CON and for injunctive relief to enjoin UMMC from taking any further steps to buy the accelerator. The Hospitals also appealed MSDH’s determination of nonreviewability, alleging it was arbitrary and capricious, and argued their due process rights were violated by the denial of a public hearing.
¶ 5. In response, UMMC filed a Rule 12(b)(6) motion to dismiss or, in the alternative, a Rule 56 summary judgment motion, arguing that the IHL has the exclusive authority to manage and control UMMC, including its purchase of the accelerator; the IHL is not subordinate to MSDH; the CON statutes do not apply to UMMC; and, if the CON statutes do apply to UMMC, they are unconstitutional as applied. The IHL filed a motion to intervene, which the chancellor granted. The Hospitals also filed a Rule 56 summary judgment motion, arguing that the CON statutes do apply to UMMC and are not unconstitutional as applied.
¶ 6. Finding that genuine issues of material fact existed as to whether the CON statutes apply to UMMC, the chancellor denied both motions. We granted the parties’ request for interlocutory appeal.
DISCUSSION
¶ 7. In considering a trial court’s grant or denial of summary judgment, we apply a de novo standard of review.[4] If, after reviewing “the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any,” it is determined there is no genuine issue of material fact, judgment will be granted to the moving party as a matter of law.[5]
I. Do the CON statutes apply to UMMC?
¶ 8. The Hospitals argue that the CON statutes apply to UMMC because UMMC falls within the CON statutes’s definitions of a covered “person” and “health-care provider.”[6] Conversely, UMMC and the IHL argue that the CON statutes do not apply to UMMC because it is a “teaching hospital” and does not fall within the CON statutes’ definition of covered health-care facilities.
¶ 9. We find it clear and unambiguous that UMMC is included within the statute’s definition of “person.”[7] When a statute is clear and unambiguous, it is unnecessary to engage in statutory interpretation.[8] The CON statutes define “person” as “an individual, a trust or estate, partnership, corporation (including associations, joint stock companies and insurance companies), the state or a political subdivision or instrumentality of the state.”[9] We previously have determined that “UMMC is an instrument of the state....”[10] Because we have determined *984 that UMMC clearly falls within the CON statutes’ definition of “person,” we need not address the Hospitals’ “health-care provider” argument. Further, Mississippi Code Section 41-7-191(4)(a)(vi) states, “[t]he department may issue a certificate or certificates of need for the expansion of child psychiatric beds or the conversion of other beds to child psychiatric beds at the University of Mississippi Medical Center....” [11] This statutory provision demonstrates the Legislature intended the CON statutes to apply to UMMC. Therefore, because the plain language of the definition of “person” under the CON statutes includes UMMC, and the Legislature clearly intended the CON statutes to apply to UMMC, we find that the CON statutes do apply to UMMC.
II. Do the CON statutes conflict with UMMC’s creation statutes?
¶ 10. UMMC and the IHL argue that the CON statutes and UMMC’s creation statutes conflict because the CON statutes require a “person” to apply for a required CON before acquiring major medical equipment,[12] but the statutes creating UMMC provide that, “[tjhere shall be built, equipped and operated as a part of the medical school, a teaching hospital.... There shall also be acquired and installed all needed equipment and supplies for the proper operation and maintenance of such medical school and hospital and other facilities for the purposes aforesaid....”[13] UMMC further argues that Mississippi Code Section 37-115-28 allows it to acquire needed equipment without obtaining a CON because it provides UMMC “shall be equipped and operated as a standard medical school in accordance with the recommended standards of the Council on Medical Education and hospitals of the American Medical Association and the council of the Association of the American Medical Colleges.”[14] Thus, UMMC argues it can purchase a linear accelerator without a CON because its creation statutes conflict with and control over the CON statutes.
¶ 11. In looking to the plain language of the CON statutes and UMMC’s creation statutes, we find the CON statutes and UMMC’s creation statutes do not conflict. While UMMC’s creation statutes provide that it shall acquire and install “needed equipment,” the statutes do not define “needed equipment,” nor do they provide the procedure with which UMMC must comply to obtain needed equipment. The CON statutes provide the procedure with which UMMC must comply to obtain needed equipment. We find that there is no conflict between the CON statutes and UMMC’s creation statutes; therefore, UMMC and the IHL’s argument that UMMC’s creation statutes control over the CON statutes is without merit.
III. Does MSDH have authority to exempt UMMC from the requiring a CON in certain circumstances?
¶ 12. UMMC and the IHL also argue that, even if the CON statutes apply to UMMC, UMMC is not required to obtain a CON for the project at issue under the State Health Plan, as the acquisition of the accelerator is for teaching purposes, not the provision of medical care. After the AG’s June 9, 2010, opinion, MSDH issued a letter to UMMC finding that UMMC was not required to obtain a CON for the *985 proposed project at issue under the 2010 Mississippi State Health Plan Section 109.03(B), which reads as follows:
3. Accessibility: Nothing in these CON criteria and standards shall preclude the University of Mississippi School of Medicine from acquiring and operating stereotactic radiosur-gery equipment, provided the acquisition and use of such equipment is justified by the School’s teaching and/or research mission. However, the requirements listed under the section regarding the granting of “appropriate scope of privileges for access to the stereotactic radiosur-gery equipment to any qualified physician” must be met.[15]
The hospitals argue that it is beyond the power of MSDH to grant this exception.
¶ 13. When reviewing an administrative agency’s action, we presume the agency to be correct, and the burden of proving otherwise is on the challenging party.[16] We also afford deference to an agency’s interpretation of the statutes under which it operates.[17] We will uphold the agency’s interpretation if it is based upon a permissible interpretation of the statute.[18] However, an administrative agency has only as much authority as is delegated to it by the Legislature.[19] Further, “[r]ules and regulations must be consistent with the relevant statutes.”[20]
¶ 14. As a part of the CON law, the Legislature empowered MSDH to “develop and implement a statewide certificate of need program.”[21] The Legislature, through enactment of Mississippi Code Section 41-7-187, delegated to MSDH the authority to “adopt by rule and regulation: ... (b) effective standards to determine when a person, facility or organization must apply for a certificate of need.”[22] The Legislature further directed, through enactment of Mississippi Code Section 41 — 7—191(l)(f), that:
(1) No person shall engage in any of the following activities without obtaining the required certificate of need:
[[Image here]]
(f) The acquisition or otherwise control of any major medical equipment for the provision of medical services; provided, however, (i) the acquisition of any major medical equipment used only for research purposes, and (ii) the acquisition of major medical equipment to replace medical equipment for which a facility is already providing medical services and for which the State Department of Health has been notified before the date of such acquisition shall be exempt from this paragraph; an acquisition for less than fair market value must be re *986 viewed, if the acquisition at fair market value would be subject to review.[23]
While at first blush it may appear that Section 41 — 7—191(l)(f) allows a person to acquire major medical equipment without obtaining a CON in only two situations— for research only and for the replacement of medical equipment for a facility already providing medical services — a closer reading reveals that these are exceptions for situations when MSDH has determined that a CON is required. A reading of Section 41 — 7—191 (1)(f) together with the CON statutes as a whole shows that Section 41 — 7—191 (l)(f) does not diminish the power of MSDH, delegated to it under Section 41-7-187, to adopt rules and regulations to determine when a CON is required.
¶ 15. We hold that it was within the authority of MSDH to adopt the “teaching” exception included at Section 109.03(3) of the 2010 State Health Plan.[24] Because MSDH had the authority to determine that UMMC did not require a CON for its proposed project, we uphold the decision of MSDH finding that UMMC was not required to obtain a CON before acquiring the linear accelerator at issue in this case.
CONCLUSION
¶ 16. We find that the CON statutes apply to UMMC and do not conflict with UMMC’s creation statutes. We also find that MSDH has the authority to create a “teaching” exception regarding when UMMC is required to obtain a CON, and hold further that MSDH acted within its authority in determining that UMMC was not required to obtain a CON before acquiring the linear accelerator at issue.
Therefore, we reverse and render on the denial of UMMC’s summary judgment motion, and affirm the denial of the Hospitals’ summary judgment motion. We need not reach the constitutional issue presented by UMMC and the IHL in order to resolve this appeal.
¶ 17. AS TO 2011-IA-00196-SCT: AFFIRMED. AS TO 2011-IA-00211-SCT: REVERSED AND RENDERED.
WALLER, C. J., CARLSON AND DICKINSON, P.JJ., RANDOLPH, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.

. Specifically, UMMC’s reasons for acquiring the accelerator include: Mississippi currently does not have a National Cancer Institute designated cancer center; Mississippi does not have any radiation oncology training programs; Mississippi does not have a specialized training program for pediatric radiation oncology; UMMC will be designated as a center for excellence for stereotactic radiotherapy by Elekta, which Mississippi also does not have; and the new technology potentially will allow UMMC to conduct total bone marrow irradiation.

. Jackson HMA does business as Central Mississippi Medical Center.

.Under Mississippi Code Section 41-7-145(g), MSDH must prepare and review a State Health Plan at least triennially and revise such plan as necessary. The plan must be approved by the governor before it becomes effective. Miss. Code Ann. § 41-7-145(g) (Rev.2009). "State Health Plan” is defined as "the sole and official statewide health plan for Mississippi which identifies priority state health needs and establishes standards and criteria for health-related activities which require certificate of need review.” Miss.Code Ann. § 41 — 7—173(s) (Rev. 2009).

. WW, Inc. v. Rainbow Casino-P'ship, L.P., 68 So.3d 1290, 1292 (Miss.2011).

. M.R.C.P. 56(c).

. Miss.Code Ann. § 41-7-173(h), (p) (Rev. 2009).

. Miss.Code Ann. § 41-7-173(p) (Rev.2009).

. Buffington v. Miss. State Tax Comm’n, 43 So.3d 450, 454 (Miss.2010).

. Miss.Code Ann. § 41-7-173(p) (Rev.2009) (emphasis added).

. Univ. of Miss. Med. Ctr. v. McGee, 999 So.2d 837, 839-40 (Miss.2008) (finding UMMC is an instrument of the state and subject to the Mississippi Tort Claims Act); see Mozingo v. Scharf, 828 So.2d 1246, 1253 (Miss.2002) (finding that a doctor worked for UMMC and therefore, was an employee of the state under the Mississippi Tort Claims Act).

. Miss.Code Ann. § 41-7-191(4)(a)(vi) (Rev. 2009) (emphasis added).

. Miss.Code Ann. § 41 — 7—191(1)(f) (Rev. 2009).

. Miss.Code Ann. § 37-115-25 (Rev.2007).

. Miss.Code Ann. § 37-115-23 (Rev.2007).

. Mississippi State Health Plan Ch. 5 Policy Statement 109.03(3) (2010), available at htt p://msdh.ms.gov/msdhsite/_static/resources/3322.pdf (last visited June 12, 2012) (emphasis added).

. Allen v. Mississippi Employment Sec. Comm’n, 639 So.2d 904, 906 (Miss. 1994).

. McDerment v. Miss. Real Estate Comm'n, 748 So.2d 114, 118 (Miss. 1999).

. Barbour v. State ex rel. Hood, 974 So.2d 232, 240 (Miss.2008) (citing Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837, 865-866, 104 S.Ct. 2778, 2792-2793, 81 L.Ed.2d 694 (1984)).

. Dialysis Solution, LLC v. Miss. State Dep't of Health, 31 So.3d 1204, 1214 (Miss.2010) (citing Miss. Pub. Serv. Comm’n v. Miss. Power & Light Co., 593 So.2d 997, 999 (Miss. 1991)).

. Id.

. Miss.Code Ann. § 41-7-187 (Rev.2009).

. Id.

. Miss. Code Ann. § 41-7-191(1)(f) (Rev. 2009) (emphasis added).

. Mississippi State Health Plan Ch. 5, Policy Statement 109.03(3), available at http://msdh. ms .gov/ms dhsite/_static/resources/3322.pdf (last visited June 12, 2012).