593 So.2d 26 (1992)
Judy MONROE
v.
BROADWATER BEACH HOTEL and Granite State Insurance Company.
No. 89-CC-691.
Supreme Court of Mississippi.
Decided January 15, 1992.
*27 Wendy L. Allard, James K. Wetzel, Gulfport, for appellant.
William D. Blakeslee, Bryant Colingo Williams & Clark, Gulfport, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and PITTMAN, JJ.
PITTMAN, Justice, for the Court:
Judy Monroe suffered an injury while in the course of her employment. She filed a report with the Workers' Compensation Commission. Subsequently the employer, Broadwater Beach Hotel, and the carrier, Granite State Insurance, filed a petition to controvert. Judy Monroe also filed a petition to controvert and a motion for hearing pursuant to General Rule 9, alleging that she was in need of medical treatment which the employer and carrier would not provide. An administrative law judge heard the claim and not only denied the request for medical relief, but also made findings as to Monroe's status as far as disability and her compensation for that disability. Judy Monroe appealed the ruling to the full Commission, which affirmed. She then appealed this finding to the Harrison County Circuit Court, which affirmed. We reverse, finding that (1) the circuit court erred as a matter of law in affirming the order of the Mississippi Workers' Compensation Commission and (2) the administrative law judge, (as affirmed by the Mississippi Workers' Compensation Commission and the circuit court,) acted arbitrarily and capriciously in going beyond the scope of Monroe's motion for medical treatment and deciding the workers' compensation case as a whole without the benefit of a full hearing.

I.
In October 1981, Judy Monroe suffered a serious knee injury. She was diagnosed as having damage to the anterior cruciate ligament, damage to the medial collateral ligament, and a torn medial meniscus. This combination of injuries is known as a triad injury. The meniscus was removed. Monroe continued to have problems with pain, swelling and buckling in her right knee in 1982.
On July 25, 1984, Monroe, thirty-three years of age, was working as a pool attendant for the Broadwater Beach Hotel and Marina. As pool attendant, she was charged with keeping the pool clean, including vacuuming the pool, adding chemicals to the water, and backwashing the pool pumps. It had rained on the 24th, and one of the motors which ran the pool pumps had flooded. The next day when trying to get help to fix the motor, Monroe's right foot slipped, and bent under her as she fell on the foot. She filled out an accident report but continued to work for a couple of days until the swelling got too bad. She consulted Dr. Hal Bishop, an orthopedic surgeon in Biloxi, Mississippi.
Dr. Bishop first saw Monroe on August 16, 1984. Monroe complained of pain, swelling, and an inability to straighten her leg. Dr. Bishop treated her conservatively, putting her right leg in a splint and using anti-inflammatory agents and heat. On October 11, 1984, she was admitted to the hospital complaining of pain and swelling. *28 Her kneecap was loose and surgery was performed to stabilize it and alleviate the pain. She was seen by Dr. Bishop on October 24 and 26 and November 8 for regular post-operative care. Bishop saw Monroe on November 29 and noted that her range of motion was less than it should have been at that stage in her recovery. On December 3, 1984, Bishop performed a manipulation on the leg, forcefully moving it through a full range of motion in order to break any adhesions and the scarring that might have formed in the joint. During this exam Monroe complained of pain in her neck and lower back. Bishop did x-rays and found some narrowing at the L-5, S-1 space. He recommended a lumbosacral corset for Monroe.
On December 19, 1984, Monroe was involved in an automobile collision in which she bumped her right knee and suffered injuries to the cervical area of her spine. On the day following the collision, December 20, 1984, Dr. Bishop noted that Monroe was complaining of neck pain and noted a contusion on the top of her knee and noted that the range of motion in her knee was full. He noted no complaints of lumbar or low back pain as a result of the collision on this visit.
Following the collision, Monroe continued under Dr. Bishop's care. When her knee failed to improve, Dr. Bishop recommended that a patellectomy, or a removal of the knee cap, be performed. That operation was performed on February 28, 1985. Subsequently, another manipulation was performed on her right knee on or about April 30, 1985. While she remained under Dr. Bishop's care, Monroe was referred by Dr. Bishop to Dr. Richard E. Buckley, a neurosurgeon practicing in Biloxi, Mississippi, for complaints of low back and right leg pain, as well as complaints of chronic neck pain with recurring headaches. Monroe also continued under Dr. Bishop's care. On July 15, 1985, he performed surgery to remove a scar on the lateral patella tendon.
Again, in October 1985, Dr. Bishop performed surgery to remove a spur which was present on her right knee and a further excision of the scar on the patella tendon. Monroe remained under Dr. Bishop's care until February 24, 1986. Dr. Bishop related that Monroe was complaining of pain in the medial aspect or middle of her knee. However, at that time, Dr. Bishop released her as having reached maximum medical recovery. He testified that, in his opinion, Monroe sustained a total disability of fifty-five percent (55%) to her right lower extremity of which twenty-five percent (25%) was due to a pre-existing injury to her right knee. Dr. Bishop has not seen or treated Monroe since February 24, 1986.
Following her release by Dr. Bishop, Monroe continued to have trouble with her knee and reported this to a representative of the carrier. Broadwater Beach Hotel and Granite State Insurance Co. referred Monroe to Dr. Ray Haddad, an orthopedic surgeon practicing in New Orleans, Louisiana.
Monroe was first seen by Dr. Ray Haddad on or about April 9, 1986. Monroe provided Dr. Haddad with the history of her knee treatment and surgeries under Dr. Bishop and described her fall in July 1984, but she failed to tell Dr. Haddad about the automobile accident of December of 1984. Dr. Haddad recommended that Monroe undergo physical therapy and be fitted with a brace for her knee. However, when this failed, Monroe was admitted to the hospital and an operation performed on her right knee on June 15, 1986. On July 21, 1986, Dr. Haddad noted that Monroe had complaints of lower back pain. She continued under Dr. Haddad's care. Her back pain continued to worsen, and Dr. Haddad recommended that she be placed in a lumbosacral corset. When she failed to improve, a CT scan with a myelogram revealed a bulging disc at the L5-S1 level of her lumbar spine.
In his first deposition taken on January 12, 1987, Dr. Haddad testified that Monroe had not yet reached maximum medical improvement for the injury to her right knee, nor for the condition of her lumbar spine. Dr. Haddad testified that it was his opinion, based on the history he received and his examination and treatment of the *29 Claimant, that the knee condition he treated her for was contributed to or aggravated by Monroe's fall in the course and scope of her employment on July 25, 1984. Dr. Haddad also testified that the medical treatment prescribed for her right knee, including walking on crutches, therapy, as well as wearing a heavy cast, aggravated her back problem. Dr. Haddad later testified, in his deposition taken May 12, 1987, that the condition of Monroe's lumbar spine was such that he recommended surgery be performed on her at the L5-S1 area of her spine. When authorization for this surgery was denied by Broadwater Beach Hotel and Granite State Insurance Co., Monroe filed a motion with the Commission asking that this medical treatment be authorized and paid for by her employer and the carrier.
The administrative law judge released his order on July 8, 1987. He found that Monroe reached maximum medical recovery as to her right knee on February 24, 1986, with a permanent and total industrial loss of use. The administrative law judge further found that fifty percent (50%) of the loss of industrial use was due to pre-existing conditions. The administrative law judge found that all medical expenses and continuing medical treatment incurred after December, 1984, were attributable to the December, 1984, car accident. It was found that Monroe's back condition was not related to her employment. The administrative law judge found temporary total disability from July 25, 1984, through February 24, 1986. Broadwater Beach Hotel and Granite State Insurance Co. were ordered to pay: $126.00 per week from July 25, 1984 through February 24, 1986, with credit for any compensation paid to date; $126.00 per week for permanent partial disability payments beginning February 25, 1986, and continuing for 87.5 weeks, with credit for compensation paid to date; and for any other medical services and supplies required as to the July 25, 1984, injury.
On July 24, 1987, Monroe petitioned to have the administrative law judge's decision reviewed by the Workers' Compensation Commission. A hearing was held before the entire Commission on December 21, 1987. The full Commission affirmed the administrative law judge's order on March 15, 1988.
Monroe filed her notice of appeal from the Commission's decision to the Harrison County Circuit Court on April 7, 1988. After considering the briefs and argument of counsel, the circuit court affirmed.

II.

THE CIRCUIT COURT ERRED AS A MATTER OF LAW IN AFFIRMING THE ORDER OF THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION.

THE ADMINISTRATIVE LAW JUDGE, AS AFFIRMED BY THE MISSISSIPPI WORKERS' COMPENSATION COMMISSION AND THE CIRCUIT COURT, ACTED ARBITRARILY AND CAPRICIOUSLY IN GOING BEYOND THE SCOPE OF THE CLAIMANT'S MOTION FOR MEDICAL TREATMENT AND DECIDING THE WORKERS' COMPENSATION CASE AS A WHOLE WITHOUT THE BENEFIT OF A FULL HEARING.
The administrative law judge erred as a matter of law when he specifically stated that the April 16, 1987, hearing was limited to whether Monroe was suffering from improper medical treatment or lack of medical treatment, and then proceeded to make findings on maximum medical recovery and apportionment. Further, the affirmance by the Compensation Commission and the circuit court was error that must be reversed.
Monroe moved for a Commission Ruling under MWCC General Rule 9 for a hearing to consider the need for additional medical treatment at the employer's expense.[1] *30 Monroe had been denied recent medical treatment and was in necessitous circumstances and desired a hearing at the earliest convenience of the commission. The purpose of the hearing was for a ruling under Rule 9. Following the hearing, the administrative law judge entered an order determining that Monroe was not entitled to further medical treatment and that Monroe had reached maximum medical recovery as of February 24, 1986. Monroe had sustained a permanent and total industrial loss of use of her right lower extremity. Fifty percent (50%) of the industrial loss was due to pre-existing conditions. The administrative law judge ordered the employer to pay Monroe permanent partial disability benefits in the amount of $126.00 per week beginning February 25, 1986, and continuing for a period of 87.5 weeks.
We have held as a matter of guidance that there is "general impropriety of the commission deciding a case ... without hearing all the facts." Scott Builders, Inc. v. Dependent of Layton, 244 Miss. 641, 145 So.2d 165 (1962).
In the case sub judice, as in Day Detectives, Inc. v. Savell, 291 So.2d 716 (Miss. 1974), the administrative law judge led Monroe to believe that there would be further hearings on the claim, and Monroe received no notice to the contrary. This Court in Day Detectives reversed and held as follows:
We have carefully considered the record in this case and are of the opinion that there was a clear abuse of discretion by the attorney-referee and the commission. After the conclusion of the initial hearing held on October 5, 1970, the claimant was led to believe by the attorney-referee that there would be further hearings with reference to this claim and did not receive any notice to the contrary.
Day Detectives, 291 So.2d at 721.
In the similar case of Abel v. Garan, Inc., 385 So.2d 618 (Miss. 1980), where the claimant filed for compensation based on multiple claims and one of those claims was decided, we enumerated the following:
It is our conclusion that (1) the hearing then had did not preclude another and subsequent hearing on the other matters made subjects of controversy; (2) the hearing was on the narrow issue of double compensation or none; and (3) that the claimant is entitled to a hearing on the remainder of his claim.
Abel, 385 So.2d at 619.
In the case sub judice there was a rather complete medical record developed since the date of the injury. The administrative law judge took the completeness of the record and declared it final without notice to Monroe; this he cannot do. Monroe is entitled to be informed that the matter is being considered on the merits for final judgment so that she can determine if all proof has been offered that she desires to offer.
The administrative law judge went beyond the announced scope of the hearing and beyond the scope of the motion after having stated, "it's not a hearing on the merits of the claim. It's strictly a hearing on the motion for an immediate hearing, under Rule 9 to determine whether the Claimant is suffering from improper or lack of medical treatment." It is true that Monroe introduced copious amounts of evidence by deposition regarding matters other than the question of her required, immediate medical attention. It must be noted, however, that the depositions of Dr. Bishop and Dr. Haddad covered the period following the accident from July 25, 1984 to May 12, 1987. The testimony was taken for the purposes of her entire claim, so it is not unusual that the depositions would contain information on every aspect of the claim. These depositions were not necessarily final or the only depositions to be taken. The introduction of information on matters outside the subject matter of the hearing does not allow the administrative law judge *31 to decide matters beyond the scope of the hearing.
We have no way of knowing if there was further evidence to be offered by Monroe. The depositions offered by Monroe were thorough as to the historical and present condition of Monroe, but for the hearing purposes, the direct examination of Monroe (the only witness at the hearing) dealt almost entirely with the connection between the condition of her back and knee. Counsel for Monroe questioned Dr. Bishop solely on the condition of the back. Because Monroe's allegation is that her back was hurt in the same incident which resulted in her knee injury and that the treatment she received for her knee contributed to her back problem, surely the evidence and the testimony regarding the back injury and the knee injury are interrelated. We cannot know the extent of future evidence nor can we predict future testimony of witnesses, but we do know that Monroe was led to believe by the administrative law judge that this was a limited hearing and that there would be another day for additional proof to be considered. An administrative law judge may not announce a limited purpose of a hearing, require the litigants to argue under limitation, and then decide the whole of the case including time of maximum recovery apportionment and compensation. A claimant is entitled to know: "This hearing is `it'; now is my time to put on my total case and expect a final decision." The ruling as rendered below assumes totality of evidence and finality of result and indeed leaves us unsure as to additional proof and additional dispositions. The Commission or administrative law judge might not perceive additional evidence or legal precedent, but we have a diligent and imaginative bar. Left unfettered, Monroe's case may be more completely developed than intended. Certainly, a claimant cannot be lead into a partial hearing and have the whole claim determined. Monroe did not waive error as suggested by the employer. The administrative law judge's change of direction was error. Monroe is entitled to a full hearing on her claim.
The administrative law judge's finding that Monroe suffered a work-related injury to her knee and that Monroe reached maximum medical improvement regarding her right knee on February 24, 1986, were not questions at issue in the motion hearing. The administrative law judge was not required to look beyond the Rule 9 motion for additional medical treatment. We therefore reverse and remand for consideration of the original motion with a determination as to the merit and at an appropriate time consideration of the full claim on its merits.
REVERSED AND REMANDED FOR PROCEEDINGS CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Mississippi Worker's Compensation commission General Rule 9 states in part:

Upon proper showing by any party of interest that the injured employee is suffering from improper medical attention or lack of medical treatment, further medical treatment may be ordered by the Commission at the employer's expense.
... .
Any hearing required by the Commission under this Rule may be held upon five (5) days notice to determine (1) if compensation payments should be suspended for refusal or failure to submit to a medical examination or to proper medical treatment or (2) that the injured employee is suffering from improper medical attention or lack of medical treatment.