OPINION ON MOTION FOR REHEARING
SOUTHWICK, J., for the Court.
¶ 1. Herring Gas Company, Inc. appeals the Circuit Court of Jones County’s judgment affirming the decision of the Mississippi Employment Security Commission[1] that Herring’s appeal was untimely pursuant to Mississippi Code Annotated § 71-5-517 (Rev.2000). On rehearing we conclude that the issue was not properly determined by the Department. We therefore grant the motion for rehearing and withdraw our prior opinion. The judgment is reversed and remanded.
FACTS
¶ 2. Patsy Kouches was employed for approximately eleven months as a secretary for Herring Gas Company, Inc. In mid-April 2003, employees of Herring audited its company records. Shortages to various accounts were discovered. The audit revealed a practice of embezzlement in which customers’ full payments were not posted to the proper account. The customers’ accounts were shorted and a portion of their payments was being stolen.
¶ 3. On April 17, 2003, Herring’s office manager, Lisa Smith was terminated for suspicion of embezzlement. In an effort to investigate the matter further, Herring prepared confirmation letters to mail to customers in order to verify current account balances.
¶ 4. The next Friday, April 25, 2003, at approximately 6:00 p.m., a gas salesman returned to the Laurel store after he finished a routine sales call. That salesman found Kouches, Wayne Herrington, Lisa Smith, and Lisa’s sister, Lynn, all talking inside the store. Lisa was not allowed in the store as she had been terminated the previous week. Lynn was not an employ *945 ee at Herring and was not allowed in the store after working hours.
¶ 5. Part of Kouches’s work at Herring was to write up and post payment tickets to Herring’s accounts-receivable. Kouches was to complete the billing statements so Herring could mail confirmation letters to customers the following week. She was scheduled to work on Saturday, April 26. Lisa’s sister Lynn shared an apartment with Kouches. Kouches did not show up for work on Saturday and did not call her employer. When she was contacted, she claimed she did not feel well and would not be coming in to work.
¶ 6. Herring’s policy was for no one to be in its Laurel store between 6:00 p.m. on Saturday and 6:00 p.m. on Sunday. When Herring’s operations manager checked the store Sunday evening, he found lights on that had earlier been turned off. He also found a unusual error message on a computer. He contacted the office computer serviceman. The serviceman found that someone “trashed” the computer and deleted several files. There were no signs of forced entry. The Laurel Police Department concluded that someone used a key to enter the store.
¶ 7. Herring employees found that several of the tickets that were being audited were stolen, as were check stubs on one of the accounts. Herring terminated Kouch-es and Herrington for suspicion of embezzlement. The Laurel Police Department was notified of misappropriation of funds and began its investigation. The very next day, Kouches filed her application for unemployment benefits.
¶ 8. The record reflects that a claims examiner spoke to Kouches and Bob Kim-brough, Vice-President of Herring Gas, on May 6, 2008. Kimbrough told the examiner that Kouches was discharged for suspicion of embezzlement, that the situation was under investigation, and that no further information was then available. Kouches told the claims examiner the police escorted her out on her last day, and that no reason was given for her termination.
¶ 9. The examiner recommended payment of benefits and mailed a notice of changeability to Herring on May 15, 2003. This notice stated, “If you wish to protest this decision, you may ask for reconsideration or file a Notice of Appeal within fourteen (14) calendar days of the mail date on the decision. Holidays and weekends will not extend the time for filing the appeal.” On the fourteenth day, the Laurel Police Department was still investigating the embezzlement.
¶ 10. On June 18, 2003, Detective Robert Morris of the Laurel Police Department mailed a letter to Herring stating that Kouches had admitted her involvement with the embezzlement from Herring. A Jones County Grand Jury eventually indicted Kouches. The record does not indicate what occurred in the prosecution thereafter. The same day Herring was notified by Detective Morris of Kouch-es’ confession, Kimbrough notified the Department by letter of the newly discovered evidence. Kimbrough’s letter to the Department stated in part:
Today I received the accompanying statement (Exhibit A) from the Laurel Police Department concerning Patsy Kouches. In light of this newly discovered evidence I am requesting that you reconsider Herring Gas Company’s status of responsibility as it relates to this case.
¶ 11. On June 24, 2003, the Department responded with a short letter. The Department stated, “In as much as you have not filed your request for a reconsideration in a timely manner, we are taking no action and our decision of May 15, 2003, *946 becomes final according to the Law.” On August 6, 2003, the Department sent Herring a notice of a telephone hearing restricted to the sole issue of whether or not the “appeal” was timely filed.
¶ 12. The hearing took place on August 11, 2003. During that hearing, the appeals referee acknowledged that Herring “was asking for reconsideration” of the May 15 decision. The appeals referee also stated that Herring’s letter dated June 18, 2003 “was not accepted as a reconsideration ... because they did not meet the time limit for filing reconsideration ... so it turned into an appeal.” When Herring’s representative directed the appeal referee to Detective Morris’s June 18th letter, the appeals referee responded:
I don’t mean to cut you off, but seem[s] like you’re about to get into more details in reference to the separation. This hearing is designed to discuss the not timely appeal by the employer. And my question, my next question to you is ... what does this have to do with the delay of the employer filing the appeal in a timely manner?
¶ 13. Herring’s representative argued that the Department would certainly have made a different determination as to benefits if it had the information, and that Herring had provided the evidence of Kouches’s confession just as soon as the Laurel Police Department provided it. The appeals referee then asked Herring’s representative if there was any other reason for Herring’s delay in “filing this appeal.” Herring’s representative mentioned that Herring might have had the evidence sooner, had someone not broken into the building and destroyed evidence. With that, the appeals referee concluded the hearing.
¶ 14. On August 12, 2003, the appeals referee mailed to Herring the decision dismissing Herring’s appeal. The referee found that Herring had fourteen days from the claims examiner’s May 15, 2003 notice letter to appeal the decision, citing Mississippi Code Section 71-5-517. We will discuss that statute below. The referee further found that Herring had not shown good cause for missing the fourteen-day appeal deadline and as such the referee had no jurisdiction and the claim examiner’s decision was final.
¶ 15. Following the decision of the referee, Herring appealed to the Board of Review. The Board affirmed the referee’s decision on September 4, 2003. Herring then appealed to the Circuit Court of Jones County. The court affirmed the decision of the Board on August 19, 2004 because Herring had failed to show good cause for untimely appealing the decision of the claims examiner to the appeals referee. Herring’s appeal to the supreme court has been deflected here.
DISCUSSION
¶ 16. The facts are uncontested here. Benefits were awarded due to the lack of sufficient evidence at the time of the initial decision by the claims examiner. The needed information was not and indeed could not have been acquired until after the time to file for reconsideration or appeal.
¶ 17. We find that the only issue on appeal is one of law: do the procedures of the Department of Employment Security allow for relaxation of the deadline for reconsideration when delayed evidence of a fraudulently made claim finally becomes available? One relevant statutory provision states in part that after a claims examiner makes an initial determination whether or not benefits are payable:
An initial determination may for good cause be reconsidered. The claimant, his most recent employing unit and all *947 employers whose experience-rating record would be charged with benefits pursuant to such determination shall be promptly notified of such initial determination or any amended initial determination and the reason therefor.... The jurisdiction of the department over benefit claims which have not been appealed shall be continuous. The claimant or any party to the initial determination or amended initial determination may file an appeal from such initial determination or amended initial determination within fourteen (14) days after notification thereof, or after the date such notification was mailed to his last known address.
Miss.Code Ann. § 71-5-517 (Supp.2006) (emphasis added). This section creates a fourteen day deadline for the filing of an appeal. No statutory deadline is placed upon a reconsideration.
¶ 18. The claims examiner’s initial notification instructed that Herring could “ask for reconsideration or file a Notice of Appeal within fourteen (14) calendar days of the mail date on the decision.... Good cause, a circumstance beyond your control, may be granted for filing after 14 days.” Though there is no statutorily-mandated fourteen day deadline for reconsideration, we consider this letter at least to be a reflection that the Department has by some internal deliberative and discretionary process decided to set this time limit for reconsiderations.
¶ 19. We have not discovered any formal Department procedural rule that affects reconsideration at the claims examiner level. There are appeal regulations, including that “[a] party desiring to appeal from an initial or amended determination shall [file the appeal] within fourteen days ... after the date such notification was mailed.... ” Miss. Emp. Sec. Comm’n App. Reg. A 1(a) (2002). When the new information was provided, the Department responded that since “you have not filed your request for a reconsideration in a timely manner, we are taking no action and our decision of May 15, 2003, becomes final according to the Law.” Soon thereafter, the Department gave Herring a telephone hearing on the sole issue of whether or not the “appeal” was timely filed.
¶ 20. The Herring submission clearly indicated that it wanted the claims examiner to reconsider based on the new evidence that was provided as soon as it became available. The evidence was of a crime committed by the claimant, a crime that would have clearly prohibited the award of benefits had evidence of it been available when the initial decision was made. We see evidence that the Department treated the submission of new evidence alternatively as a reconsideration request or as an appeal, but consistently treated it as irredeemably late. The only issue the Department was thereafter willing to consider is whether the “appeal” was timely. The Department committed legal error when it denied that it had authority to consider the new evidence.
¶ 21. Some authority to reconsider matters being processed at other levels within the agency appears in Department regulations. “The Board of Review, in its discretion, may remand any claim which is before it to a Referee for the taking of such additional evidence as the Board of Review may deem necessary to determine the rights of the parties.” Miss. Emp. Sec. Comm’n App. Reg. C 3(c).
¶ 22. Beyond the written procedures, an administrative agency may make exceptions to its non-statutory procedures in proper circumstances. See Southwick, Administrative Law, in 1 Jackson & Miller (eds.), EnoyC. Miss. Law, § 2:17 (2001). An agency was not bound by its rule requiring that after a hearing, the agency “with all *948 convenient speed, and in any event within thirty days after the conclusion of the hearing, shall take action with regard to the subject matter thereof.” McGowan v. Miss. State Oil & Gas Bd., 604 So.2d 312, 319 (1992) (quoting Board Rule 4). The court held that a related statute was “directory and not mandatory and [that the Court has in other precedents] refused to invalidate Board orders made later than thirty days after the conclusion of the hearing.” McGowan, 604 So.2d at 319. The Court held that the Board had the authority “to relax its own rule and reflect upon the matter for a reasonable time beyond the thirty day deadline.” Id.
¶ 23. If a statute establishes a precise time limit for an agency procedure, it is generally improper for the agency to extend that period. Wilkerson v. Miss. Emp. Sec. Comm’n, 630 So.2d 1000, 1002 (Miss.1994). Since an unambiguous statutory limit binds the agency, it would not have the right to grant a three-day extension to the fourteen-day appeal time set out in section 71-5-517. Id. That is the same statute relevant here for reconsider-ations at the claims examiner level, but the statute does not set a statutory limit for reconsideration. Miss.Code Ann. § 71-5-517. Therefore, a reasonable time period as set by the Department would be enforceable. The Department’s decision that fourteen days is the proper limit is part of the notice sent to parties.
¶ 24. Apparently, even a statutory limit might be relaxed if a strong equitable reason is shown:
Assuming that the statute can be read to confer power upon the Commission, giving them the flexibility to relax the standard, it should, at a minimum, do so by published rule and not by an unwritten practice subject to ad hoc and sporadic application. We have no quarrel, either, with a relaxation of the standard for “good cause” as exemplified in Cane [v. Miss. Emp. Sec. Comm’n, 368 So.2d 1263 (Miss.1979) ]. However, neither written rule nor “good cause” is shown here.
Wilkerson, 630 So.2d at 1002. We do not understand the court to have found section 71-5-517 to grant the agency power to adopt a formal rule that would allow for extensions for appeal, but the court simply made an analytical assumption. What was not an assumption but was a stated right, was that the Department has the authority to relax even a statutory standard for “good cause.”
¶ 25. There was no statutory time standard for requesting reconsideration by the claims examiner. Applicable here is that once a discretionary rule is established, an agency may allow reasonable “procedural indulgences.” The Workers Compensation Commission could allow a claimant to reopen a case in order that a second deposition be entered into evidence by the claimant’s doctor:
the Commission is an administrative agency, not a court. It has broad discretionary authority to establish procedures for the administration of compensation claims. It has like authority to relax and import flexibility to those procedures where in its judgment such is necessary to implement and effect its charge under the Mississippi Workers’ Compensation Act. It is a rare day when we will reverse the Commission for an action taken in the implementation and enforcement of its own procedural rules. Today is not such a day.
Delta Drilling Co. v. Cannette, 489 So.2d 1378, 1380-81 (Miss.1986) (emphasis added).
¶ 26. More generally and importantly, “administrative agencies may reconsider and modify their determinations or correct errors on the ground of fraud or imposition, illegality, irregularity in vital *949 matters, mistake, misconception of facts, erroneous conclusion of law, surprise or inadvertence.” Geiger v. Miss. St. Bd. of Cosmetology, 246 Miss. 542, 547, 151 So.2d 189, 191 (1963).
¶ 27. The Department did not recognize its discretionary authority to reconsider due to fraud or misconception of facts. It did not note that it could for “good cause” relax a non-statutory procedural time limit. Such discretion is in the nature of the right that courts have to grant relief from judgment based on mistake, newly discovered evidence, or fraud. M.R.C.P. 60(b). A ruling on a Rule 60(b) motion by a trial judge may be appealed, but the review will not be of the decision on the merits but only of the decision on whether to grant relief from a judgment. Overbey v. Murray, 569 So.2d 303, 305 (Miss.1990). As with courts for a new trial motion (M.R.C.P.59(b)), there is a specific time limit at this agency for seeking reconsideration of a claims examiner ruling. There is additional time in which the kind of significant error mentioned in Geiger can be brought to the attention of the Department and appropriate relief be considered. Decisions on whether to grant the relief are then subject to timely appeal.
¶28. The Department at some stage prior to creating what appears to be a form letter sent to parties about a claims examiner decision, determined that fourteen days should be the time at which to seek statutorily-authorized reconsideration. That is enforceable as the general time limit. However, contrary to the language in the Department’s June 24 letter to Herring, the initial claims examiner determination was not “final according to law” if by that the Department meant it had lost authority to reconsider the matter for sufficiently compelling cause.
¶ 29. The Department had discretion to accept this new evidence and make appropriate adjustments to the earlier decision. It was the failure to recognize and exercise that discretion in some manner that causes us to reverse for legal error. Such discretion can tend towards arbitrariness and can be abused, whether relief is granted or withheld. Properly exercised, which requires proper showings of compelling circumstances, the discretion is as essential to an agency as it is to a court.
¶ 30. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY IS REVERSED AND THE CAUSE IS REMANDED TO THE DEPARTMENT OF EMPLOYMENT SECURITY FOR DETERMINING, CONSISTENTLY WITH THIS OPINION, WHETHER THIS IS A PROPER CASE FOR EXERCISING ITS DISCRETION TO RECONSIDER A DECISION BASED ON FRAUD, NEW EVIDENCE, OR OTHER RELEVANT REASONS.
KING, C.J., LEE, P.J., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. MYERS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.

. Effective July 1, 2004, the name of the Mississippi Employment Security Commission changed to the Department of Employment Security, Office of the Governor. Miss.Code Ann. Section 71-5-11(f) (Supp.2006).