# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CC-00690-COA

| | |
|---|---|
| **MICHAEL REESE DAVIS AND ST. PAUL PFU, LLC, A LOUISIANA LLC** | **APPELLANTS/ CROSS-APPELLEES** |

**v.**

| | |
|---|---|
| **GEORGE STEPHEN GUIDO, KFG PETROLEUM CORPORATION, A MISSISSIPPI CORPORATION AND MISSISSIPPI STATE OIL AND GAS BOARD** | **APPELLEES/ CROSS-APPELLANTS** |

| | |
|---|---|
| DATE OF JUDGMENT: | 03/15/2019 |
| TRIAL JUDGE: | HON. GEORGE WARD |
| COURT FROM WHICH APPEALED: | ADAMS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | EDWARD GIBSON |
| ATTORNEYS FOR APPELLEES: | WILLIAM F. BLAIR |
| | ROBERT F. (FRANK) SPENCER |
| | ERIC LEE PATTERSON |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 11/24/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE CARLTON, P.J., GREENLEE AND LAWRENCE, JJ.

### GREENLEE, J., FOR THE COURT:

¶1.     This is an appeal by Michael Reese Davis and St. Paul PFU, LLC from a judgment of the Chancery Court of Adams County amending and affirming an order of the State Oil and Gas Board granting a permit to drill a well in the Mantua Field located in Adams County to KFG Petroleum Corporation and its director and president, George Stephen Guido. We affirm.

### FACTS AND PROCEDURAL HISTORY

¶2.    On July 2, 2018, Guido on behalf of KFG filed an application for a permit to drill the Annie G. Barnum No. 5 well in the Mantua Field located in Adams County. The application Guido submitted contained two errors, which were noted by one of the Oil and Gas Board's ("the Board") supervisors, David Snodgrass. Guido had incorrectly identified the field as "Wildcat" instead of Mantua. He also did not list the distance from the proposed well to the nearest producing well. Upon finding the areas uncompleted, Snodgrass contacted Guido, notifying him of the issues with the application. Guido promptly provided Snodgrass with the correct information and consented to the Board's staff making the needed informational changes. Once the corrections were made, the Board issued a permit administratively on July 5, 2018.

¶3.    On August 21, 2018, Michael Reese Davis filed an emergency petition requesting that KFG's drilling permit be revoked because Guido did not complete the application, and Snodgrass had no legal authority to make the changes to the drilling application. Davis also alleged that KFG's clearing of timber and leveling of property constituted "waste." Eight days later, on August 29, 2018, the Board set the petition for a hearing. Before the hearing, the Board's chairman expressly limited the hearing to the permit's validity. The chairman stated that the Board had checked the property for waste and deemed it in compliance. Since the property complied with the Board's rules and regulations, the Board would not address the waste allegation.

¶4.    Therefore, before the Board, the only factual question was whether or not the permit issued to Guido and KFG was valid. Davis argued that the application was an affidavit, and

2

Snodgrass lacked legal authority to make changes after submission since there was no written rule or regulation. Snodgrass, an underground injection-control coordinator and supervisor with the Board, testified that during the ten years he had been employed with the Board, it had been the Board's policy to assist with permit applications.

¶5.     On September 12, 2018, the Board entered a final order finding that the Board's unwritten policy allowed informational changes after the submission of forms, and therefore the permit was properly issued. Although the hearing had been limited to the permit's validity, the Board further held that KFG's cutting of trees and leveling of the property were normal actions used to prepare the oilfield, and thus Davis's waste allegations were without merit.

¶6.     Davis appealed to the Chancery Court of Adams County. After reviewing the record and the applicable law, the chancellor amended and affirmed the Board's order. The chancellor found that the drilling permit was valid but that the Board had gone beyond the purpose of the hearing by addressing the waste claims in the final order.

¶7.     Aggrieved by the chancery court's judgment, Davis appeals. Davis claims on appeal that the permit did not comply with the Board's rules and regulations or statutory law. He also claims that the Board's unwritten policy allowing informational changes contradicts the Board's written rules and Mississippi statutes.

¶8.     Aggrieved by the chancellor's ruling regarding the Board's ruling on Davis's waste allegations in its final order, Guido and KFG filed a cross-appeal. They claim that the Board had jurisdiction to rule on the waste claims since Davis invoked the Board's jurisdiction by

3

filing a petition alleging waste. Furthermore, they argue that the permit issue is moot.

**STANDARD OF REVIEW**

¶9. An appellate court reviews a chancery court's decision regarding an agency's action under the same standard of review that the chancery court was bound to follow. *Giles v. Shaw Sch. Dist.*, 203 So. 3d 1165, 1169 (¶12) (Miss. Ct. App. 2016) (citing *Miss. Sierra Club Inc. v. Miss. Dep't of Envtl. Quality*, 819 So. 2d 515, 519 (¶15) (Miss. 2002)). In its review of an administrative agency, the chancery court is limited to the record and the agency's findings. *Bd. of Law Enf't Officers Standards & Training v. Butler*, 672 So. 2d 1196, 1199 (Miss. 1996) (citing *Miss. Comm'n on Envtl. Quality v. Chickasaw Cnty. Bd. of Supervisors,* 621 So. 2d 1211, 1215 (Miss. 1993)). The only grounds to overturn an administrative agency's decision is if an appellate court finds the agency's ruling is "(1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional right of the complaining party." *Boyles v. Miss. State Oil & Gas Bd.*, 794 So. 2d 149, 152 (¶6) (Miss. 2001). If an agency's actions fail to meet one of those four conditions, an agency's decision will remain undisturbed. *Id.* "A rebuttable presumption in favor of the agency's decision exists." *Id.* Therefore, the burden to prove that the court should overturn the agency's decision based on one of the above conditions is placed on the party challenging the decision. *Ray v. Miss. Dep't of Pub. Safety*, 172 So. 3d 182, 187 (¶16) (Miss. 2015).

¶10. Great deference is given to an administrative agency's interpretation of its rule and regulations, and a reviewing court may not substitute its judgment for that of the agency

where substantial evidence exists. *Cent. Miss. Med. Ctr. v. Miss. Div. of Medicaid*, 294 So. 3d 1121, 1125 (¶10) (Miss. 2020); *see also Crossgates River Oaks Hosp. v. Miss. Div. of Medicaid*, 240 So. 3d 385, 387-88 (¶7) (Miss. 2018) ("An agency's interpretation of its own administrative rules and regulations which govern the agency's operations will generally be afforded great deference by the [c]ourt.").

## DISCUSSION

**Whether the chancery court erred by affirming the Mississippi Oil and Gas Board?**

### A.      Permit Validity

¶11.    The Mississippi legislature authorizes the Board to regulate the drilling and location of wells. Miss. Code Ann. § 53-3-5(a) (Rev. 2016). The legislature granted the Board two types of power to aid in achieving its mandated function. *Boyles v. Miss. State Oil & Gas Bd.*, 794 So. 2d 149, 157 (¶27) (Miss. 2001). The Board has the power to adjudicate and the authority to compose rules. *Id*. Under its adjudicative power, the Board resolves disputes between parties to a controversy in which no third party, including the Board, has a stake. *Id*. In its rulemaking capacity, the Board formulates rules and regulations on subject matters that fall within its jurisdiction. *Id*.

¶12.    The distinction between an administrative agency's adjudicatory and rulemaking functions are well-established. Our supreme court has refrained from "interfering with duly delegated authority to an administrative agency, particularly where an agency's rulemaking power is involved due to its legislative function." *Miss. Pub. Serv. Comm'n v. Miss. Power & Light Co.*, 593 So. 2d 997, 1000 (Miss. 1991).

¶13. Here, however, the Board was engaged in only its adjudicative function. It adjudicated a competing claim between Davis and Guido regarding the validity of KFG's drilling permit. Mississippi Code Annotated section 53-3-25 (Rev. 2016) governs the drilling permit application. If the application adheres to the Board's regulation and statutes, the permit is granted administratively without notice or a hearing. The Board's Statewide Rule No. 4 tracks almost verbatim Mississippi Code Annotated section 53-3-25. Statewide Rule 4 states in relevant part, "[b]efore any person shall commence the drilling of any well in search of oil or gas, such person shall file in duplicate with the Board on Form 2 his application for a permit to drill . . . ." The rule further states that "[i]f the application complies in all respects with the rules and regulations of the Board . . . a permit shall be issued promptly. . . . If the application for permit does not comply in all respects with the rules and regulations of the Board . . . said application shall be disallowed, and the Supervisor shall promptly notify the applicant of the reason or reasons . . . ."

¶14. Neither the rule nor the statute provides how to deal with disallowed applications. Both are silent regarding how much time must pass before making changes to an application and the exact procedure to follow when fixing that application. The rule allows a permit as long as the application complies. Where an application fails to comply, it is rejected with notice as to why.

¶15. KFG filed for the drilling permit, but its application failed to comply. Per both Mississippi Code Annotated section 53-3-25 and the Board's rules and regulations, the permit was rejected. The supervisor promptly notified Guido as to why the application failed

to comply. Upon receiving notification, Guido provided the supervisor with the missing information. He also granted the supervisor permission to make the required changes. The staff member who made the changes initialed next to the changes made. Only after the application complied with the rules and regulations did the Board issue a permit.

¶16.    Furthermore, though not addressed by Rule 4, the Board acknowledged the existence of an unwritten guideline that allows informational changes to forms after submission.

¶17.    We have consistently allowed administrative agencies flexibility to relax a procedural rule. Specifically, "an agency may modify or otherwise adjust its rules and policies in the light of its experience and changing circumstances." *Watkins v. Miss. Bd. of Bar Admissions*, 659 So. 2d 561, 568 (Miss. 1995) (citing *Orleans Audubon Soc. v. Lee*, 742 F.2d 901, 907 (5th Cir. 1984)).  In fact, the general rule is "that when a public board . . . is granted certain enumerated powers, there is usually conferred the implied power that may be reasonably necessary to the performance and exercise of the powers expressly granted." *Miss. Pub. Serv. Comm'n v. Chambers*, 108 So. 2d 550, 554 (Miss. 1959).

¶18.    In *McGowan v. Mississippi State Oil & Gas Board*, the Board's rules instructed a hearing be held within 30 days of receiving an application and then rule on the application within 30 days after the hearing. 604 So. 2d 312, 319 (Miss. 1992). McGowan argued that the Board failed to rule within the 30-day time frame. *Id*. The court held that "in matters as important as this," it is within the Board's discretion "to relax its own rule and reflect upon the matter for a reasonable time beyond the 30-day deadline." *Id*. The court relied on prior case law, which found that the statutory authority giving way to that procedural rule was not

mandatory but directory. *Id.*; *see also State Oil & Gas Bd. v. Brinkley*, 329 So. 2d 512, 515 (Miss. 1976); *Superior Oil Co. v. Foote*, 214 Miss. 857, 883, 59 So. 2d 85, 96 (1952) (noting action taken by Board after 30-day period was not invalidated and finding that "the of the statute was to place upon the Board a responsibility to act expeditiously").

¶19.    In *Herring Gas Company Inc. v. Mississippi Employment Security Commission*, the Department of Employment Security refused to review its prior decision in a case since the party failed to ask for reconsideration within the 14-day time frame. 944 So. 2d 943, 947-49 (¶¶17-29) (Miss. Ct. App. 2006). However, the 14-day time period was not "statutorily-mandated" and not found in a formal rule. *Id.* at 947 (¶¶18-19). This Court found reversible error because the Department had discretionary power to relax that procedural rule. *Id.* at 949 (¶¶29-30).

¶20.    Along with the two powers given by the Mississippi legislature, the Board also holds "an implied power" to aid in "the performance and exercise of" its enumerated powers. Similar to the agencies in *McGowan* and *Herring Gas Co.*, the Board had the discretion to relax its procedural rule to carry out its duties efficiently.

¶21.    Snodgrass testified that during his ten years of employment with the oil and gas board, it was the Board's policy to amend Rule 4 permit applications. These corrections help both the applicant and the application to comply with the Board's rules and regulations. Snodgrass also testified if applications are not fixed, the Board is left with an incorrect record and a backlog of files with incorrect information. Based on its "experience" and "changing circumstances," the Board found that allowing informational changes was a successful way

to proceed as to permit applications.

¶22. Finally, Mississippi Code Annotated section 53-3-25 supports the idea of flexibility. It states in part, "[*o*]*n good cause shown*, the unit may be altered by the board after notice and hearing." Miss. Code Ann. § 53-3-25 (emphasis added). The phrase "on good cause shown" is built-in flexibility to correct an issue.

¶23. There is substantial evidence to support the Board's and chancellor's findings on this issue. The action regarding the drilling permit was the equivalent of a re-submission of the application. Therefore, this issue is without merit.

### B. Board's "Waste" Jurisdiction

¶24. On August 21, 2018, Davis filed an emergency petition requesting that KFG's drilling permit be revoked and alleged that KFG's clearing of timber and leveling of property constituted "waste." Eight days later, on August 29, 2018, the Board set the emergency petition for hearing allowing Davis to present several witnesses and documents. However, before the hearing commenced, the Board stated that it would only address the permit's validity. The Board acknowledged that it found the "property to be in compliance" through its investigation into the waste claims. On September 12, 2018, the Board entered a final order finding that its unwritten policy allows informational changes after the submission of forms, and therefore, the permit was properly issued administratively. It further held that KFG's cutting of trees and leveling of the property were normal actions used to prepare the oilfield, and thus, Davis' waste allegations were without merit.

¶25. Mississippi Code Annotated section 53-1-17 (Rev. 2016) provides a list of the powers

9

and duties of the Board. Miss. Code Ann. § 53-1-17. In relevant part, it states that "[t]he [B]oard shall have jurisdiction and authority over all persons and property necessary to enforce effectively the provisions of this chapter and all other laws relating to the conservation of oil and gas." Miss. Code Ann. § 53-1-17(1). The Board's governing statutes further express the Board's duty to determine whether or not waste, over which it has jurisdiction, exists or is imminent. Miss. Code Ann. § 53-1-17(2). To help the Board determine "whether or not waste exists or is imminent," Mississippi Code Annotated section 53-1-17(2) allows the Board to review and collect records, investigate, inspect, and hold hearings. *Id*.

¶26.    While the Board has jurisdiction over and a duty to prevent waste,[1] the Board declared the scope of the hearing and proceeded beyond that scope after stating, "[t]his is administrative only" and "[w]e do not want to get into any other issues besides administrative." The hearing mainly focused on the permit's validity, and the only statements given regarding waste came from Davis' un-elicited testimony. The Board is not allowed to decide matters beyond the scope of a hearing simply because information is presented on issues outside the hearing's subject matter. *Monroe v. Broadwater Beach Hotel*, 593 So. 2d 26, 31 (Miss. 1992). Further, the Board "may not announce a limited purpose of a hearing, require the [parties] to argue under [the] limitation, and then decide the whole [] case . . . ." *Id*.

---

[1] The Board's jurisdiction over waste and its definition are the creature of their power and authority granted by statute and is limited thereby. *See generally* Miss. Code Ann. § 53-1-1 (Rev. 2016) and Miss. Code Ann. § 53-1-3 (l) (Rev. 2016) (waste definition).

10

¶27.    The Board erred when it specifically limited the hearing's scope to "administrative only," and then proceeded to make findings regarding the "waste" claim by Davis. Their judgment should have been limited to the validity of the permit. Therefore, we affirm the chancellor's ruling.

### C.    Moot Issue

¶28.    For the first time, Guido and KFG argue on appeal that the permit issue is moot since Davis failed to file a supersedeas bond and assert that the well in question has been plugged and abandoned.

¶29.    Our supreme court has repeatedly decided not to "adjudicate moot questions." *Barrett v. City of Gulfport*, 196 So. 3d 905, 911 (¶ 17) (Miss. 2016); *see also City of Madison v. Bryan*, 162, 166 (¶22) (Miss. 2000). A case is deemed moot where an actual controversy existed at trial but has expired at the time of review. *Barrett*, 196 So. 3d at 910. Further, a case is moot where no practical benefit exists to the plaintiff or detriment to the defendant. *Id*.

¶30.    Mississippi Code Annotated section 53-1-39 governs appeals from the Board. Miss. Code Ann. § 53-1-39 (Rev. 2016). It provides that "[t]he perfection of an appeal shall not stay or suspend the operation of any rule, regulation or order of the board, but the judge of the chancery court to which the appeal is taken may award a writ of supersedeas to any rule, regulation or order of the board after five (5) days' notice to the board and after hearing." *Id.*

¶31.    However, a case will not be considered moot "if the challenged action is capable of repetition yet evading review." *Barrett*, 196 So. 3d at 912 (¶22). To meet this exception, a

11

challenged action has to be (1) "too short to be fully litigated prior to its cessation or expiration," and (2) "a reasonable expectation that the same complaining party would be subject to the same action." *Id.*; *see also Strong v. Bostick*, 420 So. 2d 1356, 1359 (Miss. 1982). The court will also review a moot issue "when the question concerns a matter of such a nature that it would be distinctly detrimental to the public interest that there should be a failure by the dismissal to declare and enforce a rule for future conduct." *Barrett*, 196 So. 3d at 912 (¶22); *see also Sartin v. Barlow*, 169 Miss. 159, 16 So. 2d 372, 376 (1944).

¶32. Here, both the "capable of repetition-yet-evading review" exception and the public-interest exception to the mootness doctrine applies. First, although Guido and KFG assert the well has been abandoned, Davis may be subjected to the same action again since both Davis and KFG assert rights to the property. Second, the State of Mississippi and its constituents benefit and encourage the search for oil and gas. The Board's history of allowing informational changes to applications and the changes it allowed, if found moot would invited more challenges to "informational changes" to permit applications under Form 2, therefore, hindering its mandated function.

¶33. Furthermore, we must note that the issue of the supersedes bond and abandoned well is not properly before us. This Court "will not hold a [chancery] court in error for issues not presented to it for consideration." *Flynt v. State*, 183 So. 3d 1, 14 (¶41) (Miss. 2015) (citing *Moffett v. State*, 49 So. 3d 1073, 1101 (¶91) (Miss. 2010)). "Precedent mandates that this [c]ourt not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs." *Chantey Music Pub.*

12

*Inc. v. Malaco Inc.*, 915 So. 2d 1052, 1060 (¶28) (Miss. 2005) (citing *Parker v. Miss. Game & Fish Comm'n*, 555 So. 2d 725, 730 (Miss. 1989)). Because this issue is not properly before us, this issue is barred on appeal.

¶34.    Therefore, we find this issue without merit.

### CONCLUSION

¶35.    We find that the chancery court did not err in amending and affirming the State Oil & Gas Board. The drilling permit was in accordance with Mississippi Code Annotated section 53-3-25. Further, we agree with the chancellor that the Board went beyond the scope of its limited hearing. Accordingly, we affirm the judgment of the chancery court.

¶36.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McDONALD, LAWRENCE AND McCARTY, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**